STATE of Maine

v.

Philip J. WHITE.

Supreme Judicial Court of Maine.

Aug. 2, 1978.

Henry N. Berry, III, Dist. Atty., Peter G. Ballou, Deputy Dist. Atty., Portland, Michael Messerschmidt (orally), Law Student, for plaintiff.

Dunlap, Wood & O'Brien by Mark E. Dunlap, Portland (orally), for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

NICHOLS, Justice.

The Defendant, Philip J. White, and another, stand indicted by a grand jury in Cumberland County for the crimes of trafficking in hypodermic apparatuses (17–A M.R.S.A. § 1110) and furnishing a Schedule Z drug (17–A M.R.S.A. § 1106). The Defendant White brings this case here on report pursuant to M.R.Cr.P. 37A(b) from the ruling of the Superior Court, which denied his request for an evidentiary hearing on his motion to suppress evidence seized under a search warrant. The purpose of that evidentiary hearing would have been to go behind the four corners of what the Defendant concedes is a facially sufficient affidavit in support of the warrant. The recent decision of the United States Supreme Court in *Franks v. Delaware,* —— U.S. ——, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) narrows the issue before us to whether the Defendant has made the "substantial preliminary showing" of material falsity necessary to obtain such a hearing.[1]

We hold that he has not, and we therefore deny his appeal.

On April 26, 1977, on the basis of the affidavit of South Portland Police Sergeant David Martino, set out in Appendix A, a judge of the Maine District Court issued a search warrant for the premises at 241 Elm Street in South Portland, authorizing the executing officers to conduct a daytime search of that specifically described property for "large amounts" of growing marihuana, "large amounts" of marihuana in glassine bags as well as hypodermic needles and a laboratory located in the cellar, allegedly used to make illegal drugs.

The warrant was executed the same day. Among the items seized, as reflected in the inventory, were thirty-two growing marihuana plants, twenty-two "rolled" ounces of marihuana, ninety-eight hypodermic needles, tubing and glass beakers.

After the Defendant was indicted and arraigned, he brought a motion to suppress the evidence seized under the warrant. At the initial hearing, counsel for the Defendant conceded that the warrant was facially valid and that Officer Martino's affidavit, if true, was sufficient to justify issuance of the warrant. The Defendant contended, however, that the affidavit was false and requested an evidentiary hearing to prove its falsity.

In an order dated August 25, 1977, the presiding justice, recognizing the absence of case law in Maine and the split of authority elsewhere, deemed the standard of *United States v. Belculfine,* 508 F.2d 58 (1st Cir. 1974), to be controlling. Accordingly, the Defendant was given leave to file an affidavit in support of his motion so that the court could determine whether he had made the necessary preliminary showing to justify an evidentiary hearing.

---

1. The parties briefed and argued other issues which the *Franks* decision renders unnecessary to our disposition of this case.

Subsequently, the Defendant filed his own affidavit challenging the officer's affidavit, set out in pertinent part in Appendix B. The presiding justice denied the motion to suppress without holding an evidentiary hearing, ruling that the Defendant's affidavit did not sufficiently call into question the statements of the affiant officer, but rather was directed to statements made by the unnamed informant. Counsel for the Defendant then sought reconsideration of the denial on the grounds that he had been supplied police reports concerning two of the cases recited in the officer's affidavit where the informant had previously proven reliable. The Defendant's motion alleged that the information in those reports "do not support or are not consistent with" the statements Officer Martino made regarding the informant's reliability. Those police reports are not in the record before us nor, so far as we can tell, were they presented or offered to the presiding justice. The motion for reconsideration was denied, the court noting that it was unsupported by an affidavit, and even if the allegations were assumed to be true, they did not allege facts from which the court could find that the affiant officer intentionally made relevant and non-trivial false statements.

The Defendant then successfully sought leave to bring this interlocutory appeal.

In *Franks v. Delaware*, —— U.S. ——, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court squarely faced, for the first time, the "important and longstanding" Fourth Amendment issue of when, if ever, a criminal defendant has the right to challenge the truthfulness of factual statements made in an affidavit supporting a search warrant.

■ In *Franks,* the Court reversed the petitioner's rape conviction on the grounds that the Supreme Court of Delaware had erred in adopting an absolute rule against ever permitting a defendant to challenge the truthfulness of an affidavit in support

of a search warrant. The Court held that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the Defendant's request." —— U.S. ——, 98 S.Ct. at 2676. The Court also held that if the defendant establishes at such a hearing by a preponderance of the evidence the material falsity [2] of the affiant's statements, and also establishes that the affiant's statements were intentionally or knowingly false or were made with reckless disregard for the truth, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit. *Id.*

■ Thus, in order to even gain an evidentiary hearing, a defendant must make a "substantial preliminary showing" to overcome the presumption of validity with respect to the warrant affidavit.

. . . (T)he challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and these allegations must be accompanied by an offer of proof. They should point out specifically the portions of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are

---

2. In this context, "material" means necessary to the finding of probable cause.

met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. [footnote omitted].

—— U.S. at ——, 98 S.Ct. at 2685. The forming of suitable rules to govern proffers was left to the states.[3] *Id.*

It now falls to us to apply these principles to the case at bar.

■ In paragraph 2 of his affidavit, the Defendant denies five specific allegations in the warrant affidavit. However, all of those allegations were merely repeated by Officer Martino based on information supplied by the informant. These denials in no way impeach the affiant.

The Defendant also alleges in paragraph 4 of his affidavit, that no one individual has ever been in a position to truthfully make all the representations attributed by Officer Martino to his informant. Again, this allegation does not directly call into question any statement of Officer Martino. Moreover, since the Defendant was not the only occupant of the house, he has not explained how he could know (or perhaps more importantly prove) the truth of this bald assertion.

Paragraphs 5 through 10 of the Defendant's affidavit purport to name the individuals who "allegedly provided the police with information contained in the affidavit." These paragraphs then explain why these individuals could not have been the officer's informant. Aside from the fact that these allegations conflict with the allegations of paragraph 16 that the informant is still unnamed, Officer Martino's affidavit referred to only one informant rather than two. That these two named individuals might have supplied information to the police relating to this Defendant does not necessarily conflict with the fact that Officer Martino may have relied on another individual as his informant. Finally, assuming that one or the other of these individuals was Martino's informant, and assuming that the information supplied was false according to the tenor of the Defendant's allegations, this in no way impugns the integrity of Martino's actions. It is not suggested, except in the most conclusory fashion, that Officer Martino acted knowing that any of his information was false, or with reckless disregard of its truth or falsity.

■ The Defendant alleges in paragraphs 10 through 13 of his affidavit that he "has reason to believe" that some of Officer Martino's information came from a third named individual. Nowhere is it suggested on what basis is there "reason to believe." The rule of *Franks v. Delaware* does not compel an evidentiary hearing merely because a defendant suggests the name of the informant and then proceeds to allege the reasons why the individual could not have been the informant.

■ The allegations of paragraphs 14 and 15 relate to Officer Martino's conduct in executing the warrant, specifically with reference to a "pill bottle." Had the Defendant made the requisite preliminary showing with respect to the officer's affidavit, these allegations might have had evidentiary significance on the issue of the officer's good faith or lack thereof. However, these allegations alone do not justify an evidentiary hearing since they are unrelated to the affidavit presented to the dis-

---

3. Rule 47(a), M.R.Cr.P., provides that motions "may be supported by affidavit." However, while this language makes clear that affidavits are not generally required in motion practice, it would appear that a defendant would have difficulty making the requisite preliminary show-ing to justify an evidentiary hearing without one, unless material obtained through discovery made such a showing. See *State v. Spero,* N.H., 371 A.2d 1155 (1977) (police reports from other officers plainly showed that the affiant had made misstatements).

trict judge as the basis for issuance of the warrant.

It is significant to note that the key information contained in the warrant affidavit is not challenged. Specifically, the Defendant did occupy the named premises. Moreover, the "growing" marijuana, the "rolled" marijuana, the hypodermic needles, and glass beakers and tubing[4] were all present at the premises as alleged in Officer Martino's affidavit. The Defendant suggests that Officer Martino made his informant up out of thin air, but offers no explanation as to how the officer obtained what turned out to be, on the record before us, accurate information as to the presence of illegal drugs.

■ The Defendant's motion for reconsideration alleged that police reports supplied about the prior activities of the informant called the informant's prior reliability into question. We will assume without deciding that a showing that the affiant embellished upon an informant's prior reliability may, in some circumstances, compel an evidentiary hearing under the *Franks* standard. Nevertheless, the Defendant's conclusory allegations, unsupported by proffer of the police reports he claims to possess, do not amount to such a showing. We need not assume that the "informant" whose re-

liability he attacks is anyone other than one of the three named individuals attacked in his original affidavit.

■ In sum, to gain an evidentiary hearing in order to impeach a warrant affidavit, a defendant must make a "substantial preliminary showing" of both the material falsity of information in the affidavit and the affiant's knowledge of the falsity, or his reckless disregard for its truth or falsity. It is unnecessary to here delineate the standard for a "substantial preliminary showing" beyond holding that in the case at bar the Defendant has not made such a showing. Even assuming that the Defendant's allegations sufficiently call into question the truth of some of the information in the warrant affidavit, the allegations fall far short of pointing to the existence of any facts which would justify a finding by a preponderance of the evidence that the officer acted knowing the information was false, or with reckless disregard for its truth or falsity.

The entry is:

Appeal denied.

Remanded to Superior Court for further proceedings consistent with the opinion herein.

Appendices to follow.

---

**4.** Whether these items are in fact part of a laboratory related to drug manufacture, something the Defendant denied in his own affidavit, is a factual issue more appropriately resolved at trial, and we therefore intimate no opinion on whether the affidavit's characterization was accurate, even though it appears its description was.

AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

To:     Ronald L. Kellam                 Judge of the District Court

of the State of Maine

I, __David Martino__ _____, a __Police Officer_____
of the City/Town/County of ____South Portland_____
Department, in the County of ___Cumberland_____, State of Maine,
being duly sworn, do hereby state that I have probable cause to believe
that at/in the premises located at _____241 Elm_____
Street, in the City/Town of ___South Portland_____ and being owned/
occupied by ___Judy Baker & Philip White___/person (s) unknown to me said

premises described as  a two story building, light green in color, with an
attached leanto type greenhouse and with a garage located to the left rear of
the house while looking at the house from the street.

there is now concealed/located certain property, namely:   Large amounts of

Marihuana growing in the cellar and in the leanto- type greenhouse, and in the
yard that is fenced in. Also large amounts of Marihuana in plastic bags for sale
and Hypodermic needles and a laboratory located in the cellar used to make
illegal drugs ,
The said property being Contraband   Contraband

The reasons for my belief are as follows: Your affiant has information from
a reliable informant that he ( informant ) has purchased Marihuana on 4-24-77
and 4-21-77. Also he has purchased Marihuana for the past 6 months or a weekly
basis from both Judy Baker and Philip White .

Your affiant further states that my informant has  seen many large Marihuana
plants about 5 feet high growing in the cellar and in a lean-to type Greenhouse
that is connected to the house, also he has seen Marihuana growing in the back
yard and in the garage.

1. For search of premises as described here and that are referring to exhibit
2. Described as contraband and taken from the premises for future evidence ;
why the documents document you and above by xxx but xxx of presenting used objects

Page 1 of 2. Date: 4/24/77   Initials DM  Place this notation on each
                                          subsequent page.

Your affiants informant further says that there are Hypodermic Needles located in a China Closet in the Diningroom.'

Your Affiants informant has also seen rolled ounces of Marihuana in a Kitchen Drawer and also in a bedroom.

Your affiants informant also states that he has been using Marihuana for about 1 year and he knows what Marihuana looks like.

Your affiant informant has been reliable in the past in that he has given information to ypur affiant concerning a break into a garage located on D st and told this writer where the stolen goods were being kept. After an investigation it was revealed that the stolen goods were where my informant said they would be and a full recovery was made.

Your affiants informant also gave information that there were 6 stolen TV Sets that had been stolen in a break in Portland. A full recovery was made.

Your Affiants informant also told this writer where a stolen Cassette Player was that had been Stolen from a Car on Kelsey St in So. Portland and this Item was recovered and an arrest was made.

I therefore request that a search warrant issue authorizing a

search of said premises and a seizure of the above-named property

during the Daytime Hours.

Subscribed and sworn by ___DAVID MARTING___ before me this ___26TH___ day of ___APRIL___, 19 22.

Last page of __2__

298

STATE OF MAINE          RECEIVED          SUPERIOR COURT
CUMBERLAND, SS.                           Criminal Action
                                          Docket No. 77-516

                        ETHEL A. KENISTON
                        CLERK OF COURTS
STATE OF MAINE
                              *
     vs.                      *           A F F I D A V I T
                              *
PHILIP WHITE                  *
                              *
                              *

          Defendant Philip White, having been duly sworn deposes and
states on oath that to the best of his knowledge and belief the follow-
ing statements are true:

          1.  By specifying as false certain statements contained in
Detective Martino's affidavit, he does not mean to imply that statements
not specified as false are in fact true.

          2.  The following statements contained in Detective Martino's
affidavit are false:

          A.  The Defendant and/or Judy Baker sold marijuana on April
24, 1977 and also that the Defendant and Judy Baker sold marijuana for
the past six months on a weekly basis. Neither the Defendant nor Judy
Baker sold marijuana on a weekly basis over the past six months to any
individual or group of individuals.

          B.  That he or Judy Baker grew marijuana in the garage.
Neither he nor Judy Baker has ever grown marijuana in the garage.

          C.  That there were hypodermic needles located in the china
closet in the dining room. Neither he nor co-Defendant Judy Baker has
ever kept hypodermic needles in a china closet in their dining room.

          D.  That he and/or Defendant Judy Baker had rolled ounces
of marijuana in a kitchen drawer. Neither he nor Judy Baker have ever
kept marijuana in a kitchen drawer.

          E.  That the Defendant had a laboratory located in the
cellar used to make illegal drugs. The Defendant had some glass beakers
in his cellar which he used to reclaim an enamel solvent.

RECEIVED.

A. KENISION
COURT

3. The above described statements which are false are relevant and material in that they are reputedly the product of first-hand observation and tend to indicate the existence of an illegal drug business. The magistrate who issued this search warrant undoubtedly relied on those statements in concluding that probable cause existed for the issuance of the search warrant.

4. No one individual has ever been in a position to truthfully make all the representations about the content of the Defendant's house and grounds that Detective Martino has attributed to his informant.

5. The South Portland Police Department has supplied Defendant Judy Baker with the names of two people who allegedly provided the police with information contained in the affidavit of Detective Martino Those people are Gertrude Noonan and her daughter, Candy Swan. Copies of their statements are attached to this affidavit.

6. Neither Gertrude Noonan nor Candy Swan have ever purchased marijuana from either the Defendant or Judy Baker nor have either of the named informants ever seen marijuana plants in the Defendant's cellar or in a lean-to type greenhouse connected to the Defendant's house.

7. Neither of the named informants have ever seen hypodermic needles located anywhere in the house particularly in a china closet in the dining room.

8. Neither of the named informants have ever seen rolled ounces of marijuana in one of the kitchen drawers of Defendant's house.

9. Gertrude Noonan has not been in the Defendant's house since

RECEIVED

the spring of 1976.

10. Candy Swan has not been in the Defendant's house except on one occasion since the fall of 1976. That one visit took place on April 25th, 1977, when Candy Swan entered the Defendant's house without invitation. Defendant Philip White was not at home during the visit but Judy Baker has indicated to him that the Swan visit was confined to the kitchen area of the Defendant's house.

11. The Defendant has reason to believe that certain of the information contained in Detective Martino's affidavit may have been obtained from Thomas Noonan, the fourteen year old son of Gertrude Noonan. In relation to Thomas Noonan, the Defendant states that Thomas Noonan has never seen marijuana plants growing in the garage of the Defendant's house. Furthermore, Thomas Noonan has never seen any hypodermic needles located in the china closet in the Defendant's dining room nor has Thomas Noonan ever seen rolled ounces of marijuana in the bedroom or in a kitchen drawer in the Defendant's house.

12. Thomas Noonan has denied any participation in this case.

13. Thomas Noonan has also denied giving the police any information concerning the activities indicated by Detective Martino in his affidavit to support his contention that the informant is reliable, namely information concerning a break into a garage located on D Street, information concerning six stolen television sets, and information concerning a stolen cassette player. Prior to the search and seizure on April 26, 1977, none of the people implicated in the above described crimes were associates or friends of either the Defendant Philip White

RECEIVED

`:.?   1 :3/:`

ETHEL A. KENISION
...and..seizure...

or Defendant Judy Baker. Prior to the search and seizure on April 26th, 1977, none of the people implicated in the above described crimes had ever been inside the Defendant's house. Prior to the search and seizure on April 26, 1977, no one had been in the Defendant's house who associates with the people implicated in the above crimes.

14. In conducting the search at the Defendant's house, Detective Martino partially withdrew from the Defendant's sight by leaning around the corner of the doorway which separates the Defendant's kitchen and dining room and then produced a pill bottle that had formerly contained a prescription for Defendant Philip White. Defendant Philip White has no personal knowledge about the nature of the substance contained in the pill bottle at the time that it was produced by Detective Martino since the last time the Defendant saw the pill bottle was many months ago and at that time the pill bottle was empty.

15. Defendant Philip White believes that Detective Martino either arranged to have the pill bottle filled and planted in his house or that Detective Martino personally carried the pill bottle onto the premises at the time of the search. Defendant Philip White cites that conduct by Detective Martino as grounds for his belief that Detective Martino also intentionally included information in his affidavit which Detective Martino knew to be false, specifically the information about purchases and sales of marijuana over the past six months on a weekly basis and also information regarding the liability of the "informant."

16. Since this court has refused to order the District Attorney's office to disclose the identity of the "informant" in this case

**302**

RECEIVED

ETHEL A. KENISION
CLERK OF COURTS

and since no one individual has ever been in a position to truthfully make all the representations about the content of the Defendant's house and grounds that Detective Martino has attributed to his informant, Defendant Philip White concludes and suggests that Detective Martino has created his informant out of thin air.

Dated at Portland, Maine this ____/____ day of _____, 1977.

_____
Philip White

ACKNOWLEDGMENT

STATE OF MAINE
CUMBERLAND, SS.

Personally appeared before me the above-named, Philip White, and made oath that the foregoing is a true statement.

Dated:_____   _____
                          Monique G. Morse/Notary Public

My commission expires:_____