STATE of Maine

v.

Judith A. BAKER and Philip J. White.

Supreme Judicial Court of Maine.

Dec. 19, 1979.

Henry N. Berry, III, Dist. Atty., Peter G. Ballou, Deputy Dist. Atty. (orally), Portland, Nancy Ziegler, Law Student, for plaintiff.

Murray, Plumb & Murray by Peter L. Murray (orally), Glenn R. Anderson, Portland, for Baker.

Dunlap, Wood & O'Brien by Mark E. Dunlap (orally), Portland, for White.

Before McKUSICK, C. J., and POMEROY, WERNICK, GODFREY and NICHOLS, JJ.

GODFREY, Justice.

Defendants Judith A. Baker and Philip J. White were indicted for "furnishing marijuana," 17–A M.R.S.A. § 1106 (1979), and "trafficking in hypodermic apparatuses," 17–A M.R.S.A. § 1110 (1979). Convicted after a jury trial, they now appeal, challenging the sufficiency of the evidence to support the convictions. Defendant White appeals also the denial of his motion, made during trial, to suppress evidence. In the case of each defendant, we deny the appeal from the conviction for "furnishing marijuana" but sustain the appeal from the conviction for "trafficking in hypodermic apparatuses."

The state's witnesses testified to the following facts: Three South Portland police officers, accompanied by a federal drug enforcement officer, searched the premises at 241 Elm Street, South Portland, pursuant to a search warrant. On arriving at the house, the officers were met at the door by the defendant White. While the search was going on, defendant Baker entered the premises. The search revealed a box containing ninety-eight hypodermic syringes with needles, located in the cellar underneath some other boxes, many potted plants growing in the cellar and in a greenhouse attached to the house, twenty-two rolled plastic bags containing plant material, twenty in a freezer in the cellar and two in a cupboard on the first floor, and two sets of scales, a "triple-beam balance scale" and a small portable scale. In a small tobacco pouch in a closet on the second floor, one of the officers found the syringe part of a hypodermic apparatus without any needle. There was no testimony indicating whether the syringe matched the 98 syringes in the box in the cellar. Without objection, one of the police officers testified that in his opinion, based on prior experience, the potted plants growing in the cellar and greenhouse were marijuana.

Each of the twenty-two plastic bags and its contents weighed between 28 and 31 grams, or about one ounce. One bag was introduced in evidence (State's Exhibit No. 9), approximately one-half of the plant material having been sent earlier to a laboratory for chemical analysis. The chemist who testified as an expert witness concluded that the substance analyzed by him was marijuana. The other twenty-one plastic bags of plant material were similar in appearance to State's Exhibit No. 9.

The state also introduced in evidence photographs of the potted plants found growing on the premises. Other physical evidence introduced included the two scales and the box of hypodermic syringes with needles. Finally, the state introduced an attested copy of a deed conveying the premises at 241 Elm Street to Judith Baker in 1973.

The only defense witness, Earl Harvey, testified that he was a friend of both defendants, both of whom had resided at 241 Elm Street for six years. On different occasions, while visiting, he had seen both leave the room and come back with a substance resembling State's Exhibit No. 9. He also testified that he had seen White use hypodermic needles several times, once to remove an air bubble from the wallpaper and the other times in "cross-mating" his plants.

The jury having returned a verdict of guilty on both counts in each case, each defendant moved for judgment of acquittal on the ground of insufficient evidence, and the motion was in each case denied. On appeal, the defendants again raise the issue of sufficiency of the evidence to support the convictions.

## I. *Motion to Suppress*

The defendant White raises one issue on appeal not raised by Baker: He challenges the presiding justice's refusal to consider his renewed motion to suppress made at trial. Defendant's pre-trial motion to suppress had been denied and the order denying his motion had been unsuccessfully appealed to the Law Court. *State v. White*, Me., 391 A.2d 291 (1978).

The trial justice did not err in refusing to entertain this motion when it was made at trial. Rule 41(e), M.R.Crim.P., *State v. Bishop*, Me., 392 A.2d 20 (1978). Neither exception to the requirement that such motions be made before trial applies in this case: Defendant did not lack opportunity to make the motion before trial, and he was not unaware of the grounds for the motion.[1]

## II. *Furnishing Marijuana*

The definition of furnishing is found in 17–A M.R.S.A. § 1101(18):

"18. 'Furnish:'

A. To furnish, give, dispense, administer, prescribe, deliver or otherwise transfer to another;

B. To possess with the intent to do any act mentioned in paragraph A."

Inasmuch as the state did not adduce any evidence that the defendants actually transferred marijuana, it is clear that the state undertook to prove that they possessed marijuana with the intent to furnish it, within the meaning of subdivision (18)(B) of section 1101.

Adequate evidence was introduced to show that both defendants knowingly possessed marijuana. Baker was the owner of the house where growing marijuana plants were located, and both Baker and White lived there. The defendants' own witness testified that he had seen both Baker and White in actual possession of marijuana in their home. Dried plant substance which was taken from their home was determined by chemical analysis to be marijuana. The jury could have properly inferred possession from that evidence.

Sufficient evidence was also produced to show that defendants intended to furnish

marijuana. The chemically tested twelve-gram sample was introduced in evidence as was the remaining plant material in State's Exhibit No. 9 from which the twelve grams were taken. By comparing it with the chemically tested marijuana the jury could have rationally inferred that the plant material in State's Exhibit No. 9 was also marijuana. Since the remaining 21 plastic bags contained plant material similar in appearance to the chemically tested material and State's Exhibit No. 9, the jury could have concluded that the other bags also contained marijuana. Since there were 22 bags each containing close to one ounce, the relatively large quantity involved, nearly a pound and a half, considered in conjunction with the manner in which it was packaged, and the presence of two sets of scales on the premises, permitted a rational inference that the marijuana was intended for more than the personal use of the possessors; namely, that it was intended for transfer to others. The evidence was sufficient to convict the defendants of furnishing marijuana. *See Commonwealth v. Hunt*, 256 Pa. Super. 140, 389 A.2d 640 (1978).

The trial justice instructed the jury as follows, concerning the inference permissible under 17–A M.R.S.A. § 1106(3):[2]

"Now in that regard, ladies and gentlemen, our statutes provide that a jury may infer that an individual was unlawfully furnishing a scheduled drug and that is marijuana, if he intentionally or knowingly possesses more than one and a half ounces of marijuana. So, if a person possesses, has subject to their dominion and control, more than one and a half ounces of marijuana, that fact and that fact alone will permit the jury to infer that they are guilty of the offense here

---

1. White's proposed renewed motion to suppress was to be supported by two police reports which were submitted as an offer of proof. These were the reports he had failed to include in the record in *State v. White*, Me., 391 A.2d 291 (1978). The police reports do not contradict the basic facts set forth in the affidavit concerning earlier occasions when the police informant had proved reliable. The minor differences in detail noted by defendant White

do not amount to the required "substantial preliminary showing" of material falsity in the officer's affidavit concerning the informant's prior reliability. *See State v. White*, Me., 391 A.2d 291, 293 (1978).

2. "1106.3. A person shall be presumed to be unlawfully furnishing a scheduled drug if he intentionally or knowingly possesses more than 1½ ounces of marijuana."

charged. Now, again, it must be shown that such possession was intentional, that it was the conscious object to possess marijuana or knowing that the possession was with an awareness of what the object was, that it was marijuana. So, if it is proven beyond a reasonable doubt that each Defendant intentionally or knowingly possessed more than one and a half ounces of marijuana, from that fact and that fact alone you are permitted but not compelled to find that the particular Defendant is guilty of this offense. You may reach such conclusion, of course, only if you are convinced beyond a reasonable doubt as to the particular Defendant's guilt."

The defendants did not object during trial to the inclusion in this instruction of the statutory permissible inference. Hence, if there was error in the charge, it is cognizable on appeal only if it was a seriously prejudicial error tending to produce manifest injustice. Rules 30(b) and 52(b), M.R. Crim.P.; *State v. McKeough*, Me., 300 A.2d 755, 757 (1973).

■ In the absence of evidence of any actual transfers, to convict defendants of furnishing marijuana, the jury must have concluded that defendants possessed it with intent to "furnish." On the evidence introduced in this case, to conclude that defendants possessed more than 1½ ounces of marijuana, the jury must have found that marijuana was contained in the 22 separate bags, each containing close to one ounce. The jury would have had to conclude that if defendants possessed marijuana at all, they possessed far more than 1½ ounces and that it was packaged in a manner strongly suggestive of its ready availability for transfer to others. Assuming for the sake of argument that there was some infirmity in the judge's charge, we cannot find, on the facts of this case, that it was seriously prejudicial

or tended to produce manifest injustice. Moreover, the jury was properly instructed that the inference was only permissive, not mandatory, and they were warned that the inference was not to be made unless they were convinced of guilt beyond a reasonable doubt.[3]

### III. "Trafficking in Hypodermic Apparatuses"

The defendants were also convicted of "trafficking in hypodermic apparatuses" in violation of 17–A M.R.S.A. § 1110.[4] Trafficking is defined in 17–A M.R.S.A. § 1101(17) as follows:

"17. 'Traffick:'

A.  To make, create, manufacture;

B.  To grow or cultivate, except with respect to marihuana;

C.  To sell, barter, trade, exchange or otherwise furnish for consideration; or

D.  To possess with the intent to do any act mentioned in paragraph C, except that possession of 2 pounds or less of marijuana with such intent shall be deemed furnishing."

Offering no evidence that defendants manufactured or sold "hypodermic apparatuses," the state attempted to prove that defendants possessed the 98 hypodermic apparatuses in the box in the cellar with the intent to furnish them for consideration, within the scope of subdivision (D) of the definition of trafficking.

■ The only evidence adduced at trial to prove intent to "sell, barter, trade, exchange or otherwise furnish" hypodermic apparatus for consideration was the quantity of apparatus in the box in the cellar. The 98 hypodermics in the cellar were in a box bearing the description "100 syringes with needles". There was no evidence of any sale. The defendants' friend testified

---

3.  *See County Court v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

4.  "§ 1110. *Trafficking in hypodermic apparatuses*

    1.  A person is guilty of trafficking in hypodermic apparatuses if he intentionally or knowingly trafficks in a hypodermic apparat-

us, unless the conduct which constitutes such trafficking is either:
A.  Expressly authorized by Title 22; or
B.  Expressly made a civil violation by Title 22.
2.  Trafficking in hypodermic apparatuses is a Class C crime."

that he had seen the box in the cellar once during the preceding autumn and that White had used a hypodermic to mend wallpaper and tend the plants in the house. There was no explanation for the syringe in the closet.

Aside from the sheer number of hypodermics, the evidence actually tended to show that they were not being sold. The possible inference that ninety-eight of the hundred apparatuses had remained untouched in the box for seven or eight months had no tendency to show that defendants intended to furnish them to others, especially when the use of one hypodermic was otherwise accounted for by the testimony of Earl Harvey. On the basis of the evidence in this case, the jury's conclusion that defendants possessed marijuana with intent to furnish it to others does not support any inference that defendants intended to traffic in hypodermic apparatuses. *See Redden v. State,* 281 A.2d 490 (Del.1971).

We hold, therefore, that there was insufficient evidence of "trafficking in hypodermic apparatuses" to establish defendants' guilt of that crime beyond a reasonable doubt. The convictions on that count of the indictment must be set aside.

The entry is:

Appeal of each defendant denied in part and sustained in part.

Judgment of conviction of each defendant for furnishing marijuana, affirmed.

Judgment of conviction of each defendant for trafficking in hypodermic apparatuses, vacated.

Remanded for appropriate proceedings consistent with this opinion.

ARCHIBALD and GLASSMAN, JJ., did not sit.