**STATE of Maine**

**v.**

**Richard LANGLEY.**

Supreme Judicial Court of Maine.

June 11, 1968.

Warren E. Winslow, Asst. County Atty., Portland, for plaintiff.

Grover G. Alexander, Gray, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN and WEATHERBEE, JJ.

WEBBER, Justice.

The defendant appeals from his conviction of the crime of robbery. Defendant here asserts that the evidence was insufficient to support the guilty verdict rendered by the jury. Defendant further contends that he was prejudiced by alleged errors of law in connection with rulings on evidence given by Witness W. The State relies on (1) testimony of the victim describing assault and robbery by an unidentified assailant, (2) undisputed evidence that shortly after the robbery occurred, defendant was in possession of the stolen property, and (3) alleged admissions by defendant to Witness W that he did in fact commit the robbery.

 There was ample evidence to support the verdict of the jury apart from the defendant's admissions. That defendant was in possession of the stolen property shortly after the robbery was not disputed. The defendant, testifying in his own behalf, confirmed this fact but offered the explanation that he found the property lying in the street. It has long been held in this State that possession of stolen property by the accused shortly after the theft, not satisfactorily explained, will justify conviction of larceny. State v. Merrick (1841), 19 Me. 398; State v. Capodilupo (1921), 119 Me. 600, 112 A. 387; State v. Russo (1928), 127 Me. 313, 143 A. 99; State v. Lizotte (Me.1967), 230 A.2d 414. The rule applies equally when the crime charged is breaking, entering and larceny. State v. Saba (1942), 139 Me. 153, 27 A.2d 813; State v. Lizotte, supra. The same principle applies when the charge is robbery. Commonwealth v. Wilson (1959), 394 Pa. 588, 148 A.2d 234, 244; People v. Leving (1939), 371 Ill. 448, 21 N.E.2d 391, 392; Whippler v. State (1962), 218 Ga. 198, 126 S.E.2d 744, 750. Whether or not the proffered explanation was credible and satisfactory was a jury question.

Witness W, called by the State, related her conversations with the defendant in the course of which he admitted the crime. During her cross-examination by defendant's counsel she declined to answer questions on the ground that her answers might tend to incriminate her. Defendant now contends (a) that she had waived the privilege and should have been compelled to answer, and (b) that defendant was thereby deprived of his constitutional right to cross-examination. The record discloses, however, that these issues were never properly raised at trial and are in fact tendered for the first time on appeal.

The claim of privilege first arose in this manner. Witness W had described how she came to be in the company of "Dicky" (the defendant) and two other young men whom she referred to as "Pete" and "Sonny." After stating that they were all at "Pete's" home and that "Dicky" and "Pete" left her there alone with "Sonny," she was asked:

"What did you and Sonny do?

MR. WAHL: Objection. What she and Sonny did while at the house has no bearing on the defendant.

MR. ALEXANDER: If it please the Court, it will ultimately certainly bear on her credibility very strongly.

MR. WAHL: I press the objection, your Honor.

MR. ALEXANDER: I will press the question, if your Honor please.

THE COURT: In the first place I will inquire whether counsel for the State or the defendant have advised this witness as to her constitutional right to refrain from answering any questions that tend to incriminate her.

MR. WAHL: No, your Honor.

THE COURT: Then I will advise her. She is a witness called by the State. Do you contest the Court's suggestion that she be advised that she need not answer any question that might tend to incriminate her?

MR. ALEXANDER: I will say this—ordinarily the situation is reversed.

THE COURT: I understand. Do you want a hearing on that question?

MR. ALEXANDER: If the Court feels it should instruct her *then I would not object to the instruction.* (Emphasis ours)

THE COURT: Well, Miss Witness, do you know what I mean when I say that you are not compelled to make any statement that would tend to incriminate you?

WITNESS: Yes.

THE COURT: Do you understand what I mean?

WITNESS: Yes.

* * * (The Court then further explained the nature of the privilege)

THE COURT: And you understand, if you did have intercourse with a person not your husband, that would be the crime of fornication. Do you know what that means?

A. No.

THE COURT: Well, it's a misdemeanor but nevertheless a crime to have sexual intercourse with a person not your husband. Do you understand that?

A. Yes.

Q. Do you know what sexual intercourse is?

A. Yes.

THE COURT: Now, you may answer any question directed to you that may tend to incriminate you of that crime or any other crime, if you choose to do so. If you do not choose to do so you may refuse to answer. Do you understand that?

A. Yes. I would rather not answer that.

MR. ALEXANDER: Do you invoke your privilege his Honor has just outlined to you?

A. Yes."

It should be noted that defendant's counsel made no claim that the witness had waived the privilege and offered no objection to the action of the presiding Justice in permitting the witness to claim the privilege.

Later during cross-examination the same witness was asked:

"Q. After Sonny and Peter left for Lewiston you and Richard had sexual intercourse, it that correct?"

■ Before the witness answered, the Court again instructed her as to the privilege and again the witness claimed the privilege and declined to answer. Defendant's counsel offered no objection or comment and merely continued with his examination. An objection to an action or a ruling of the presiding Justice made for the first time on appeal comes too late. An exception is made only when the error complained of is so highly prejudicial and so taints the proceeding as virtually to deprive the aggrieved party of a fair trial. In the instant case there is no showing of either error or prejudice to the defendant. According the privilege against self-incrimination to an ordinary witness, not a party, with respect to matters collateral and unrelated to the subject matter covered by the witness in her direct examination was proper. Evans v. O'Connor (1899), 174 Mass. 287, 54 N.E. 557; see State v. Wentworth (1875), 65 Me. 234, 246, 247. Moreover, after a direct examination covering only 5½ pages of the record, the witness was subjected to a thorough and searching cross-examination which covers 26½ pages. Assuming that the only purpose of the ques-

tion pertaining to relations between the witness and the defendant was to show bias and hostility on the part of the witness, we note that in the course of further cross-examination the examiner was able to elicit from the witness that she had had sexual relations with the defendant, that she had charged him with rape and she had testified before the grand jury in support of her charge of rape against him. In the light of this evidence, the jury could hardly have failed to be aware of her hostility toward the defendant and it was then for the jury to say whether or to what extent that fact affected her credibility. The defendant was in no way prejudiced by what proved to be but a momentary interruption in cross-examination.

The entry will be

Appeal denied.

DUFRESNE, J., did not sit.