**STATE of Maine**

v.

**George MOODY.**

Supreme Judicial Court of Maine.

Argued Nov. 16, 1984.

Decided Dec. 31, 1984.

David W. Crook, Dist. Atty., John Alsop (orally) Asst. Dist. Atty., Augusta, for State.

Levey & Gleason, P.A., John S. Gleason (orally), Winthrop, for defendant.

Before McKUSICK, C.J., NICHOLS, ROBERTS, VIOLETTE and GLASSMAN, JJ., and WERNICK, A.R.J.

NICHOLS, Justice.

On April 24, 1984, the Defendant, George Moody, was convicted of two counts of unlawful sexual contact, 17–A M.R.S.A. § 255 (1983 & Supp. 1984–1985)[1] and one count of gross sexual misconduct, 17–A M.R.S.A. § 253 (1983 & Supp. 1984–1985),[2] following a jury trial in Superior Court (Kennebec County). Challenging these convictions, the Defendant raises ten points on appeal. We consider only three of these issues and sustain his appeal.

The Defendant called as a witness Peter Allen, Ph.D., a clinical psychologist, associated with the Kennebec Valley Mental Health Center. Dr. Allen had received a referral from the Department of Human Services with respect to the complainant, the daughter of the Defendant's girl friend of several years.[3] The complainant, who was fourteen years of age at the time of the trial, had visited Dr. Allen on several occasions. At trial the Defendant asked the psychologist to relate what the complainant had told him with respect to any alleged sexual abuse. The State interposed an objection based on the Physician and Psychotherapist-Patient Privilege, M.R. Evid. 503. The presiding justice then excused the jury and permitted the attorneys to conduct a voir dire of the witness.

The voir dire revealed that the complainant had not declared to Dr. Allen that the allegations of sexual abuse were true; on one visit, when the Defendant was present, she had expressly denied that the allegations were true. After the completion of the voir dire, the presiding justice upheld the State's claim that the complainant's communications with Dr. Allen were privileged, except for those which took place when the Defendant was present. The Defendant now contends that this ruling constituted prejudicial error. We agree.

---

1. 17–A M.R.S.A. § 255 (1983 & Supp. 1984–1985) provides in relevant part:
   1. A person is guilty of unlawful sexual contact if he intentionally subjects another person, not his spouse, to any sexual contact, and

   .    .    .    .    .

   C. The other person has not in fact attained his 14th birthday and the actor is at least 3 years older; ....

2. 17–A M.R.S.A. § 253 (1983 & Supp. 1984–1985) provides in pertinent part:

   A person is guilty of gross sexual misconduct
   1. If he engages in a sexual act with another person, not his spouse, and

   .    .    .    .    .

   B. The other person has not in fact attained his 14th birthday; ....

3. The complainant's mother had become the Defendant's wife by the time of the trial.

■ Under the general rule of privilege codified in M.R.Evid. 503(b),[4] a patient may refuse to disclose, and may prevent others from disclosing, confidential communications made for the treatment of her mental or emotional condition. Dr. Allen met the complainant to diagnose and treat such mental and emotional problems as may have resulted from the alleged sexual abuse. As such, the general rule of privilege applied to their conversations, except for those that took place when the Defendant was also present. *See* M.R.Evid. 503(a)(4) (definition of "confidential").

■ By virtue of the plain language of the rule, the privilege, however, is conditional; if the appropriate individual fails to assert the privilege, it is waived.[5] M.R. Evid. 503(d) expressly provides that this is a privilege that may be claimed by the patient, by his guardian or conservator, or by the personal representative of a deceased patient.

■ In the case at bar neither the complainant, her father, nor her mother asserted the privilege. Nor did Dr. Allen assert the privilege on behalf of the complainant, which he would have been presumed to have authority to claim. M.R.Evid. 503(d). Instead the State purported to assert the privilege. Nothing in the plain language of M.R.Evid. 503, which applies to both criminal and civil actions,[6] indicates that the prosecutor is a permissible claimant. We thus find that the presiding justice erred in sustaining the State's claim of privilege. For this reason, if for no other, we must vacate the judgment.

Two other issues that the Defendant has raised on this appeal are almost certain to arise upon a new trial. As such, we discuss them in the interest of judicial economy. *See State v. Edwards*, 458 A.2d 422, 425 (Me.1983); *State v. Ayers*, 433 A.2d 356, 363 (Me.1981).

■ In attempting to show that the complainant had fabricated the allegations of sexual abuse, the Defendant called to the stand Deborah Truman, a friend of both the Defendant and his wife. Deborah testified that she had encountered the complainant in the neighborhood park one day and asked her whether the Defendant "bothered her in any way." Deborah stated that the girl replied, "No, that she just didn't like him." On cross-examination, the prosecutor asked Deborah why she had asked that question. Deborah responded that the complainant's grandmother "had mentioned it to my mom over coffee one afternoon that she had heard." The prosecutor asked Deborah to relate the substance of this conversation. The Defendant objected, arguing that the testimony was "rank hearsay" and "extremely prejudicial." The presiding justice overruled the objection, noting that the State was entitled to elicit the substance of the conversation because it did not go to the truth, but was a legitimate part of cross-examination and impeachment. Deborah proceeded to testify to the substance of that conversation. The Defendant now argues that the ruling admitting this testimony was erroneous. We agree.

■ As we have previously indicated, impeachment evidence is subject to an objec-

---

4. M.R.Evid. 503(b) provides:

    **(b) General rule of privilege.** A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional condition, including alcohol or drug addiction, among himself, his physician or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.

5. *See State v. Lewisohn*, 379 A.2d 1192 (Me. 1977). Construing 16 M.R.S.A. § 60 (Supp. 1973–1974) *repealed by* P.L.1977, ch. 564, § 79 (effective July 23, 1977) and 32 M.R.S.A. § 3815 (Supp.1968–1969) *repealed by* P.L. 1977, ch. 564, § 125 (effective July 23, 1977), which are predecessors of M.R.Evid. 503, we concluded that the psychologist-patient privileges are personal to the patient who must claim them. *Id.* at 1211.

6. M.R.Evid. 1101.

tion based upon unfair prejudice outweighing probative value. *State v. Heald*, 393 A.2d 537, 539–540 (Me.1978); *State v. Cedre*, 314 A.2d 790, 800 (Me.1974). In the instant case, the prosecutor was attempting to discover fabrication or bias in Deborah's testimony. Deborah's explanation that she had questioned the complainant because she had heard a conversation between Deborah's mother and the complainant's grandmother fully served any such purposes. Any minimal impeachment value in eliciting the substance of that conversation was far outweighed by the resultant prejudice to the Defendant. Although the presiding justice is accorded broad discretion in balancing probative value with unfair prejudice, we conclude that his ruling admitting the substance of this conversation constituted an abuse of that discretion.

■ The Defendant also asserts that the presiding justice erred in his conduct of the voir dire by not taking each prospective juror into a private setting and questioning the juror about any personal exposure to child abuse.

As is authorized by M.R.Crim.P. 24(a),[7] the presiding justice elected to conduct the voir dire himself. The presiding justice asked the prospective jurors a number of questions, including whether any had been exposed to a case involving sexual activity, and whether any juror would "have difficulty" with a case involving improper sexual conduct with minors. After completing this series of questions, the presiding justice requested both attorneys to come to the sidebar and there he asked them whether they had any objections to the questions which had been asked and whether they wished to request any additional questions. Defense counsel responded by asking the presiding justice to inquire into the reasons for any marital breakups the prospective jurors may have had, and whether child

abuse had been a contributing factor. The presiding justice refused to do so. After vigorous objection from defense counsel, the presiding justice asked the prospective jurors the following question:

> Have any of the prospective jurors been involved in a family situation where there was either allegations or in fact abuse of children that can be either involved in that kind of family situation and either as a child or in their family in some way? And that can be answered up at the sidebar here.

Defense counsel then requested the presiding justice to take each prospective juror into a private setting and question him individually as to his exposure to child abuse; the presiding justice denied the request. The Defendant now argues that this denial was error. Again, we agree.

■ The purpose of voir dire examination is to detect bias and prejudice in prospective jurors in order that the Defendant will be tried by as fair and impartial a jury as possible. *State v. Lovely*, 451 A.2d 900, 901 (Me.1982). As we have previously observed, the presiding justice, "above all others, is the immediate custodian and steward of justice in the circumstances and exigencies of the particular case." *Lovely*, 451 A.2d at 902, *quoting Matter of Kozlov*, 79 N.J. 232, 240, 398 A.2d 882, 885 (1979). In the conduct of voir dire, therefore, it is his responsibility to balance the competing considerations of fairness to the defendant, judicial economy, and avoidance of embarrassment to potential jurors.

■ We have recognized the special role of the justice's expertise in the conduct of voir dire and have repeatedly stated that the presiding justice is afforded considerable discretion in determining the scope of voir dire. E.g., *Lovely*, 451 A.2d at 901;

7. M.R.Crim.P. 24(a) provides:

The parties or their attorneys may conduct the examination of the prospective jurors unless the court elects to conduct an initial examination itself. If the court elects to conduct an initial examination, when that examination is completed the court shall permit the parties or their attorneys to address additional questions to the prospective jurors on any subject which has not been fully covered in the court's examination and which is germane to the jurors' qualifications.

*State v. Robbins,* 401 A.2d 161, 163 (Me. 1979).

 Moreover, we have further observed that areas of potential juror bias should receive special attention from the trial court in the conduct of voir dire. *See, e.g., Robbins,* 401 A.2d at 163; *State v. Littlefield,* 374 A.2d 590, 596–598 (Me. 1977). In a criminal case involving allegations of sexual child abuse, few conditions present more potential for juror bias to the defendant than a juror's exposure in the past to child abuse. In the instant case the presiding justice asked the prospective jurors whether they had been exposed to child abuse and told them that they could come forward to the sidebar to answer the question. We cannot, however, accept the State's argument that potential jurors would be no more likely to expose painful and embarrassing experiences in a private setting than they would at sidebar, in the presence of the entire panel of prospective jurors as well as other spectators in the courtroom. No more do we agree with the State's argument that considerations of judicial economy preclude the presiding justice from questioning each juror in a private setting, individually, as to his exposure to child abuse. Expedition is subsidiary to the goal of impanelling an impartial jury. *Littlefield,* 374 A.2d at 597. In the instant case, questioning each prospective juror in a private setting would have reduced a serious potential source of juror bias, without creating for the juror an embarrassing setting for the interrogation. We conclude that the presiding justice abused his discretion in declining to ask these questions in a private setting.

 Finally, we note that the Defendant also contends that there was insufficient evidence to convict him. Upon careful review of the record we find no merit in this argument.

The entry is:

Judgment vacated.

Remanded for further proceedings consistent with the opinion herein.

All concurring.