497 A.2d 134 (1985)
STATE of Maine
v.
Charles R. DUROST.
Supreme Judicial Court of Maine.
Argued June 12, 1985.
Decided July 31, 1985.
Paul Aranson, Dist. Atty., Laurence Gardner (orally), Asst. Dist. Atty., Portland, for the State.
Hewes, Culley & Beals, John F. Lambert, Jr. (orally), Portland, for defendant.
Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.
WATHEN, Justice.
Defendant Charles R. Durost appeals from a judgment of the Superior Court (Cumberland County), entered on the jury's verdict, finding him guilty of four counts of unlawful sexual contact in violation of *135 17-A M.R.S.A. § 255(1)(C) (1983). Defendant argues that the Court erred in: 1) refusing to voir dire prospective jurors individually, 2) refusing to dismiss the indictment because of an agreement not to prosecute, 3) refusing to suppress statements made to the police, and 4) granting a motion to exclude evidence of the prosecutrix's sexual activity.

I.
Defendant is the adoptive father of the prosecutrix. The prosecutrix was born on January 30, 1967. At the age of six, she was adopted by defendant and his wife.
The grand jury charged defendant with four counts of unlawful sexual contact. Section 255(1)(C) provides:
1. A person is guilty of unlawful sexual contact if he intentionally subjects another person, not his spouse, to any sexual contact, and
* * * * * *
C. The other person has not in fact attained his 14th birthday and the actor is at least 3 years older;
The term "sexual contact" means any touching of the genitals for the purpose of arousing or gratifying sexual desire, however, it does not include sexual intercourse or other "sexual acts." See 17-A M.R.S.A. § 251(D) (1983).
The prosecutrix testified that the defendant subjected her to frequent incidents of sexual contact, beginning in 1977 and ending in 1982. Defendant testified that he often woke the prosecutrix in the morning and engaged in roughhouse wrestling with her. He admitted that unintentional sexual contact might have occurred during these episodes, but he denied intentional sexual contact. Defendant, however, testified that in November of 1982 shortly before the prosecutrix first took her allegations to her mother, the prosecutrix took defendant's "hand and pressed it between her legs, and that's the only time."
On December 2, 1982, the prosecutrix's allegations were brought to the attention of Pat Valleau, an employee of the Department of Human Services ("DHS"), and Sergeant Michael Wallace from the Portland Police Department. Sgt. Wallace and Ms. Valleau interviewed the prosecutrix at her school, and Sgt. Wallace also spoke with defendant's wife at the school. Sgt. Wallace informed defendant's wife that the Sergeant wanted to speak with defendant. Defendant and his wife went to the Portland Police Station on the night of December 2. Sgt. Wallace questioned defendant about the prosecutrix's allegations. A tape of the questioning was played at trial while Sgt. Wallace was on the stand.
At the pretrial hearing, defendant sought to suppress the statements he made to Sgt. Wallace and to dismiss the charges against him. In support of his motions to suppress and dismiss, defendant argued that, both before and after Sgt. Wallace questioned defendant, Ms. Valleau and Sgt. Wallace made enforceable promises not to prosecute defendant if defendant and his wife attended counseling sessions. Defendant and his wife attended counseling sessions until their counselor terminated the counseling. The suppression Justice denied both the motion to suppress and the motion to dismiss.
On the opening day of the trial, defendant requested an opportunity for individual voir dire of the jurors. His request was denied. In addition the State requested, and the Court granted a motion in limine to exclude testimony concerning allegedly consensual sexual activities that the prosecutrix engaged in with a third person. These activities allegedly took place after the incidents underlying the charges against defendant and after she left defendant's household, with DHS approval, to live at the house of a schoolfriend. Defendant appeals from the resulting convictions.

II.
Initially, defendant contends that the presiding Justice committed reversible error in refusing to permit counsel to conduct *136 individual voir dire of the members of the jury panel. Before the trial commenced, both counsel conferred with the presiding Justice for the purpose of formulating a set of questions designed to elicit information concerning juror exposure to the subject of sexual abuse of children. The record refers to the results of that conference but does not include a transcript. At the beginning of jury selection, defense counsel requested that he be permitted individual voir dire; a request that he had apparently made for the first time at the earlier conference. The Justice denied the request in part, indicating that he intended to ask the questions resulting from the conference but would consider permitting counsel individual voir dire at sidebar if the responses of the jurors suggested the need for further information.
During jury selection, the Court asked:
[I]f any member of the jury has been involved in an incident or an allegation or any litigation which involved charges or allegations of this sort. And when I say involved, I mean has anyone been the victim of, accused of, or been a witness in any proceedings, any allegations relating to sexual abuse, specifically sexual abuse of younger people.
The Court followed this inquiry by asking whether "a close personal friend or a close relative was or has been involved in a situation of this sort." Inquiry was also made whether any juror was a member of an organization advocating victim's rights or whether media attention to abuse cases would interfere with any juror's ability to judge the facts impartially. Finally, the prospective jurors were asked whether from any question they were asked, or not asked, anyone doubted that they could serve fairly and impartially. Seven prospective jurors responded affirmatively to one or more of the questions. With the agreement of both counsel, the Court, without further inquiry, excused all seven jurors for cause. At the conclusion of the examination of the jury panel, defense counsel informed the Court that he did not object to the Court's questions, nor did he wish to propose any additional questions for the Court to ask. He repeated his request for individual examination of the remaining members of the panel, however, and suggested that "[e]verything I've been reading in the media would lead me to indicate in a ... random selection ... there ought to be ... 10 to 20 people standing up, if they were in fact being truthful." The Court again denied the request, finding that the responses of the panel had revealed "significant candor." Relying on language contained in our decision in State v. Moody, 486 A.2d 122 (Me.1984), defendant contends that the presiding Justice's failure to permit individual voir dire of the remaining members of the jury panel constitutes reversible error.[1] We disagree.
Defendant argues that Moody mandates individual voir dire in any case involving allegations of sexual abuse of children. It should be recognized that in Moody the judgment was vacated on the unrelated grounds of an inappropriate assertion of the physician-patient privilege. The Court addressed the issue of jury examination only as a matter of judicial economy to preclude the same issue from arising upon a new trial. In that opinion, however, this Court observed that in conducting voir dire it is the presiding Justice's "responsibility to balance the competing considerations of fairness to the defendant, judicial economy, and avoidance of embarrassment to potential jurors." Id. at 125. In recognition of the difficulty in striking an appropriate balance, and in deference to the trial Justice's expertise, considerable discretion is afforded the trial Justice in determining the scope of voir dire. State v. Lovely, 451 A.2d 900, 901 (Me.1982); State v. Robbins, 401 A.2d 161 (Me.1979). On appeal the decision of the trial court will be reversed only for an abuse of discretion. The present case does *137 not involve a refusal on the part of the trial Justice to make any inquiry into a sensitive area,[2] but, rather, the issue is the extent of the inquiry. Defense counsel offered no additional questions that he proposed to address to the jury, nor did he suggest that the Court's inquiry was incomplete. Counsel contended that because of an assumed statistical disparity in the number of responses, he was entitled to repeat the same questions to the same jurors on an individual basis. We find no abuse of discretion in the trial Justice's conclusion that the jurors had exhibited candor in their responses.[3] Unless we were to mandate individual voir dire in all cases involving similar charges, an action that we have not previously taken, and one that we now reject, the difficult task of balancing the competing considerations must reside in the sound discretion of the trial Justice.
We are satisfied in this case that the Court's decision reflects a "conscientious judgment directed by law and reason and looking to a just result." State v. Lovely, 451 A.2d at 901.

III.
Defendant argues that the Court erred in denying his motion to dismiss the indictment against him. Relying on federal decisions such as United States v. Barrett, 390 F.Supp. 1022 (D.S.C.1975), defendant contends that the record demonstrates a promise on the part of the State, reliance, and disregard of that promise. Defendant bases his argument on alleged promises not to prosecute attributed to Sgt. Wallace and Ms. Valleau. Even assuming that a promise not to prosecute made by a police officer or State mental health worker can be enforced by a defendant, the defendant in this case has failed to demonstrate either the existence of an unconditional promise or detrimental reliance.
The hearing Justice found as a matter of fact that no unconditional promise was made to withhold prosecution. Similarly the Court found no detrimental reliance on the part of defendant. These findings may be overturned only if no competent evidence in the record supports them. See State v. Fillion, 474 A.2d 187, 190 (Me. 1984). After reviewing the record, we conclude that the hearing Justice's conclusions have ample support. Although defendant presented evidence that Sgt. Wallace made statements to him concerning the possibility that prosecution might not occur if defendant cooperated in seeking counseling, such ambiguous statements do not rise to the level of an unconditional promise. Further, the record supports the conclusion that defendant attended counseling in an effort to reunite his family and not to avoid prosecution. There was no error in denying the motion to dismiss the indictment.

IV.
On an issue separate from but related to his motion to dismiss, defendant argues that the statements he made to Sgt. Wallace were involuntary, and, therefore, the Court erred in denying his motion to suppress those statements. We have previously held that "[a] confession, otherwise freely and voluntarily made, is not vitiated by a promise of leniency unless such promise was the motivating cause of the confession." State v. Tardiff, 374 A.2d 598, 601 (Me.1977). Defendant contends that because his statements were obtained by a *138 promise not to prosecute, the statements cannot be considered voluntary. The hearing Justice was "satisfied beyond a reasonable doubt that the confession was voluntarily given." The hearing Justice's determination will not be overturned if the evidence rationally can support the determination. See State v. Caouette, 446 A.2d 1120, 1124 (Me.1982). In reaching his determination, the Justice was permitted to accept the testimony of the State's witnesses rather than that of defendant's witnesses. See State v. Larrivee, 479 A.2d 347, 350 (Me. 1984).
The record fully supports a finding that no promises, conditional or unconditional, were made to defendant before he made his statements to Sgt. Wallace. No error was committed in denying the motion to suppress.

V.
Defendant argues that the Court erred in excluding evidence of the prosecutrix's alleged sexual relationship with another man. Defendant contends that the evidence explains: 1) the prosecutrix's motive for "fabricating the allegations of abuse," and 2) the inconsistency between the prosecutrix's statement to Sgt. Wallace that she had not had sexual intercourse with defendant and her statement in October 1983 that she had had sexual intercourse with defendant. In the circumstances of this case the Court did not err in excluding testimony concerning subsequent sexual activity on the part of the prosecutrix pursuant to M.R.Evid. 403.
Defendant was permitted to explore the relationship that developed, in the time period before the prosecutrix left defendant's household, between the prosecutrix and the man with whom she later allegedly became sexually involved. During cross-examination, the prosecutrix was asked whether she became friendly with this man, had phone conversations with him or went places with him. Defendant also elicited testimony from the prosecutrix's sister that the prosecutrix once confided "that she wasn't interested in boys her own age and liked much older guys." In sum defendant was permitted to present evidence implying that the prosecutrix made false allegations in order to escape defendant's household to move to the house of a schoolfriend where she would be closer to an older man whom she had some interest in seeing.
In view of the fact that defendant offered no evidence of any sexual activity between the third person before she left defendant's home, and because defendant was otherwise afforded broad scope in his efforts to impeach her credibility, we find no abuse of discretion in granting the motion in limine under Rule 403.
The entry is:
Judgment affirmed.
All concurring.
NOTES
[1] The fact that all jurors who responded affirmatively were excused for cause, apparently foreclosed the need for the limited individual voir dire reserved in the Court's initial ruling.
[2] In Lovely this Court found no abuse of discretion in the determination that a question concerning anti-homosexual bias was not germane to juror's qualifications but, rather, error was found in making that decision without any inquiry or deference to counsel's advantage of prior research and investigation. State v. Lovely, 451 A.2d at 902.
[3] We note that the principal question posed to the jury panel in this case was more general than the question posed in Moody and, therefore, was less likely to produce juror embarrassment. In Moody the members of a jury panel were asked whether they had "been involved in a family situation where there was either allegations or in fact abuse of children." (emphasis added). In the present case the inquiry was whether any juror had been involved in a similar incident, allegation, or litigation as either an accused, a victim or as a witness.