STATE of Maine

v.

Scott WATERHOUSE.

Supreme Judicial Court of Maine.

Argued Nov. 13, 1985.
Reargued May 8, 1986.
Decided Aug. 15, 1986.

an added significance.

James Tierney, Atty. Gen., Charles K. Leadbetter, Eric Wright (orally), Asst. Attys. Gen., Augusta, for plaintiff.

Caron, Ayotte & Boone, James Boone (orally), Ronald G. Caron, Saco, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ., and VIOLETTE, A.R.J.*

WATHEN, Justice.

Defendant Scott Waterhouse appeals his conviction of murder, 17–A M.R.S.A. § 201(1)(A) (1983), after a jury trial in the Superior Court (Lincoln County). Defendant contends that the Superior Court erred in conducting a general *voir dire* of two jury panels on the issue of satanism without affording the defendant a prior opportunity to conduct individual *voir dire* on that issue and in admitting evidence of his belief in satanism at trial. We affirm the judgment of conviction.

## I.

In a pretrial conference, defense counsel asked for permission to conduct individual *voir dire* of prospective jurors on the subject of satanism. Defense counsel stated that he wished to elicit information to determine whether the jurors would be objective in viewing such evidence. The presiding justice stated his intention to address the general question to the entire jury panel and defense counsel agreed. Later in the same conference, defense counsel expressed concern that any discussion of satanism should await individual *voir dire.* The presiding justice apparently concurred, and stated tentatively that prospective jurors would be questioned on all issues except satanism on general *voir dire* and that satanism could be addressed on individual *voir dire.* When jury selection began, however, the presiding justice disregarded his previously stated plan and raised the general subject of satanism with two panels of jurors, excusing three jurors who expressed an inability to view such evidence objectively. At the conclusion of general *voir dire,* both the prosecution and the defense questioned individual members of the jury panel on the subject of satanism. At no point did defense counsel object to the manner in which *voir dire* was conducted. Defendant now contends on appeal that the trial court committed reversible error by raising the subject of satanism on general *voir dire* without first allowing defendant an opportunity for individual *voir dire* on that issue. Because the claim of error is unpreserved, we review only for obvious error. *State v. Crocker,* 435 A.2d 58, 71 (Me.1981).

█ Defendant's claim of reversible error is without merit. This Court has repeatedly recognized the considerable discretion over the conduct of juror *voir dire* vested in the presiding justice. *State v. Durost,* 497 A.2d 134, 136 (Me.1985); *State v. Weymouth,* 496 A.2d 1053, 1055 (Me. 1985). In substance the presiding justice asked the same question proposed by defense counsel, inquiring whether any member of the two jury panels would have difficulty viewing evidence of satanic belief objectively. The court did not inquire into sensitive personal or family history such that jurors might be embarrassed to an-

* VIOLETTE, A.R.J., sat at oral argument as an Associate Justice, but retired prior to the preparation of this opinion. He has joined in the dissenting opinion as an Active Retired Justice.

swer truthfully in front of a group. *Cf.* *State v. Durost*, 497 A.2d 134 (Me.1985) (question as to personal involvement in prior incident or litigation concerning child abuse); *State v. Moody*, 486 A.2d 122 (Me. 1984) (question of involvement in family situation where child abuse occurred or was alleged). Without the threat of embarrassment, the court's inquiry did not impair defendant's ability to discover prejudice. As a whole, the record of juror *voir dire* reflects "a painstaking and conscientious examination of the veniremen" by both court and counsel in an effort to address defense counsel's stated concern that jurors be capable of giving objective consideration to evidence of satanic belief. *State v. Thibeault*, 390 A.2d 1095, 1099 (Me. 1978). The trial justice committed no error.

## II.

From the strategy revealed during jury selection, it is apparent that defense counsel assumed from the beginning that the trial would include evidence of satanism and defendant's belief therein. In fact the State introduced a tape recorded conversation between defendant and police officers in which defendant described at length both satanism and the extent of his involvement with that belief. In addition, the State introduced into evidence portions of a book referred to in defendant's recorded conversation, entitled "The Satanic Bible." The State also called a friend of the defendant to testify regarding satanism. At no time did defendant object to the admission of this evidence. Defendant now argues for the first time on appeal that the evidence pertaining to satanism was inadmissible under M.R.Evid. 403 because its potential for unfairly prejudicing the jury outweighed its probative value. As no objection was made at trial, we review admission of the evidence regarding satanism only for obvious error. *State v. Franklin*, 478 A.2d 1107, 1110 (Me.1984).

This case involves the strangulation killing of a twelve year old girl. The presence of semen on the victim's clothing indicated that the perpetrator masturbated over the victim's body.

In the tape-recorded conversation introduced at trial, the defendant described sex and destruction rituals as part of the system of satanic beliefs. The defendant stated that satanism represents that darker side of humanity and urges indulgence of man's carnal needs rather than abstinence. He characterized the "seven cardinal sins" of the christian faith as representing abstinence. In addition, portions of "The Satanic Bible" introduced at trial contained the following passages:

Satan represents indulgence, instead of abstinence!

Satan represents all of the so-called sins, as they all lead to physical, mental, or emotional gratification!

Are we not all predatory animals by instinct? If humans ceased wholly from preying upon each other, could they continue to exist?

Death to the weakling, wealth to the strong!

Blessed are the powerful, for they shall be reverenced among men—Cursed are the feeble, for they shall be blotted out.

We conclude that the evidence of satanism and defendant's belief therein is relevant for the permissible purposes of proving the identity of the perpetrator as well as his intent. As to identity, the evidence described above demonstrates that as a believer in satanism, defendant could view commission of the heinous crime involved in this case as a means of achieving "physical, mental or emotional gratification." Similarly, he could believe that a demonstration of strength by total domination of a weaker person would bring "reverence among men" at the expense of one who, being weak, deserved his fate. It was for the jury to decide whether such motivations were actually at work in this case, but the evidence of satanic beliefs is certainly probative of motive and, therefore, of the identity of the perpetrator within the meaning of M.R.Evid. 401. On the issue of intent, which the State has an affirmative

burden to prove, the consistency between the circumstances of the crime and satanism's emphasis on sex, destruction and denigration of weakness, makes it more likely that if defendant killed the victim, he did so intentionally rather than by accident, i.e., through recklessness or criminal negligence. Thus, the evidence of satanism is probative on the issue of intent. M.R.Evid. 401.

■ Evaluation of an objection based on M.R.Evid. 403 requires a balancing of the probative value of evidence against the danger of unfair prejudice. That balancing itself justifies the exclusion of relevant evidence only if that danger substantially outweighs the probative value of the evidence. Furthermore, under the obvious error standard applicable in this case, the conviction may be vacated only if admission of the challenged evidence "is so highly prejudicial and so taints the proceeding as virtually to deprive [defendant] of a fair trial." *State v. True*, 438 A.2d 460, 468 (Me.1981) (quoting *State v. Langley*, 242 A.2d 688, 690 (Me.1968)). We acknowledge that evidence of defendant's satanic beliefs carried with it the potential for creating unfair prejudice. Nevertheless, the evidence was relevant and probative on the issues of both motive and intent, and since the challenge to this evidence is based on Rule 403, for error at all to exist that probative value must be substantially overbalanced by the danger of unfair prejudice. Weighing these factors, we conclude that the admission of evidence regarding satanism was not so highly prejudicial, nor did it so taint defendant's trial, as to amount to obvious error.

The entry is:

Judgment affirmed.

McKUSICK, C.J., and NICHOLS, ROBERTS and SCOLNIK, JJ., concurring.

GLASSMAN, Justice, with whom VIOLETTE, Active Retired Justice, joins, dissenting.

I respectfully dissent. Because evidence of satanism and Scott Waterhouse's belief therein had little or no probative value in terms of the issues before the trier of fact, its admission was so unfairly prejudicial as to constitute obvious error.

It would be difficult to conceive of any evidence in a criminal proceeding more inflammatory than evidence of the defendant's belief in satanism. In the instant case the highly prejudicial effect of this evidence was heightened by the manner in which some of the evidence was presented: the playing of a tape recording of a conversation between Waterhouse and police officers in which Waterhouse discussed his beliefs.

Because Waterhouse did not object to admission of the evidence, its admission is reviewed under the obvious error standard of M.R.Evid. 103(d). On the facts of this case I find obvious error affecting Waterhouse's substantial rights.

The State contends, and the court holds, that the evidence of satanism and Waterhouse's belief therein is relevant for the permissible purpose of proving motive. I disagree. Motive is not an element of the crime of murder. *See* 17-A M.R.S.A. § 201(1)(A) (1983). Evidence of motivation may be relevant when, as here, the identity of the killer is in question. *See* McCormick, *Law of Evidence* § 190 at 450-51 (E. Cleary 2d ed. 1972) (evidence of motive serves as evidence of identity). Here, however, the evidence of satanism that was admitted did not establish any motive for the crime and was therefore irrelevant on the issue of identity. First, the evidence disclosed that satanism, as professed by Waterhouse, did not espouse the taking of human life, and advocated the use of violence only in self-defense. Since there is no evidence that the victim had attacked, injured or even offended Waterhouse, the evidence of satanism tended, if anything, to negate motivation. Second, the contention that Waterhouse as a believer in satanism might view commission of the heinous crime involved in this case as a means of achieving personal gratification or of dem-

onstrating his strength by domination of a weaker person amounts to a contention that Waterhouse is a self-indulgent person who scoffs at ethical and societal prohibitions against killing. The contention is in short that Waterhouse has acted in conformity with his character: because Waterhouse is a bad man, he has committed a crime. *See State v. Conlogue,* 474 A.2d 167, 172 (Me.1984), quoting R. Field & P. Murray, *Maine Evidence* § 406.1 at 75 (1976) (character is a "generalized description of one's disposition, or of one's disposition in respect to a general trait, such as honesty, temperance, or peacefulness"). Because the evidence of satanism and Waterhouse's belief therein is not relevant to show motive, it is not admissible for that purpose. M.R.Evid. 402.

The State contends, and the court holds, that the evidence was relevant on an alternative basis: the showing of intent. The court states that "the consistency between the circumstances of the crime and satanism's emphasis on sex, destruction and denigration of weakness, makes it more likely that if defendant killed the victim, he did so intentionally rather than by accident." This purported relevancy, however, is theoretical and disappears when we examine the facts of this case. Waterhouse has not contended that the killing was not intentional, nor is there evidence to support a finding of an unintentional killing. The critical question before the jury was the identity of the killer. Thus the evidence of satanism was not relevant to the real issues in the case. The fact that Waterhouse told the police he could not intentionally kill anyone does not change this analysis. This statement when examined in context amounts to a profession of innocence rather than a contention that Waterhouse had killed the victim, but did so unintentionally. Moreover, the State introduced this statement in its case in chief. The State should not be permitted to introduce evidence negating the defendant's intent and then to introduce inflammatory evidence to repair the damage done to its own case.

Weighing the inflammatory impact of the evidence of satanism against its minimal, if any, relevance in this case, I find that its admission was "so highly prejudicial and so taint[ed] the proceeding as virtually to deprive the [defendant] of a fair trial." *State v. True,* 438 A.2d 460, 468 (Me.1981), quoting *State v. Langley,* 242 A.2d 688, 690 (Me.1968). Accordingly, I would vacate the conviction.