STATE of Maine

v.

Elizabeth TURNER.

Supreme Judicial Court of Maine.

Argued June 13, 1985.

Decided July 17, 1985.

Janet T. Mills, Dist. Atty., Mark A. Beede (orally), Asst. Dist. Atty., Auburn, for the State.

Thomas M. Mangan (orally), Lewiston, for defendant.

Before NICHOLS, ROBERTS, VIOLETTE, WATHEN, GLASSMAN, and SCOLNIK, JJ.

GLASSMAN, Justice.

The defendant, Elizabeth Turner, appeals from the judgment of conviction entered by the Superior Court, Androscoggin County, on the jury's verdict finding her guilty of violations of 17–A M.R.S.A. § 853, promotion of prostitution, and § 853–A, engaging in prostitution. She alleges the trial court erred (1) by failing in the jury voir dire adequately to inquire as to possible racial prejudice, (2) by permitting only the direct testimony of a State's witness to be read back to the jury, and (3) by admitting evidence of the defendant's prior conduct to show her predisposition to prostitution. We find no merit in any of the defendant's allegations and affirm the judgment of the Superior Court.

The Lewiston Police Department conducted an undercover investigation in response to reports of occurrences of prostitution at the Flamingo Hotel. Using information gathered by this investigation, the Androscoggin County grand jury returned an indictment charging the defendant with promotion of and engaging in prostitution.[1] The defendant claimed that she was entrapped.

I.

Prior to questioning the jury panel, the court asked both counsel if they had any requests for specific voir dire questions. Because the defendant is a black woman, the defense counsel requested, *inter alia,* "at least some type of question relating to their [the jury's] prejudice." During the voir dire the court inquired whether anything about the defendant's race would make it difficult for any person to serve impartially. None of the potential jurors responded to this question. The court then inquired whether, based on any questions asked or unasked by the court, any of the panel would have "suspicions or hints or feelings" that would make it difficult to serve in a fair and impartial manner if selected. Again, there was no response from any member of the panel.[2]

Following voir dire, the defense counsel requested that the court make further inquiry of the jury as to possible racial prejudice and suggested additional questions. The court rejected the proposed questions. On appeal, the defendant argues that there was more than a remote possibility of juror bias and that the court erred by failing to ask the proposed questions concerning possible racial prejudice.[3] We disagree.

■ It is well established that any decision as to the extent of voir dire rests within the sound discretion of the trial justice. *State v. Robbins,* 401 A.2d 161, 163 (Me.1979); *State v. Littlefield,* 374 A.2d 590, 597 (Me.1977). In addition, the United States Supreme Court has noted that "[t]here is no constitutional presumption of juror bias for or against members of any particular racial or ethnic group." *Rosales-Lopez v. United States,* 451 U.S. 182, 190, 101 S.Ct. 1629, 1635, 68 L.Ed.2d 22 (1981). Further,

[o]nly when there are more substantial indications of the likelihood of racial or ethnic prejudice affecting the jurors in a particular case does the trial court's denial of a defendant's request to examine the juror's ability to deal impartially with this subject amount to an unconstitutional abuse of discretion.

---

1. Count One of the indictment charged a violation of 17–A M.R.S.A. § 1103, trafficking in scheduled drugs. At the conclusion of the State's case, the court granted the defendant's motion for judgment of acquittal as to this count.

2. In conducting its voir dire, the court phrased its questions to allow a juror to comply with the court's request to stand if the juror's response was in the affirmative. In response to other portions of the voir dire a number of jurors did so. Those jurors were dismissed for cause.

3. Apparently to suggest the existence of juror bias, the defendant relies on a U.S. Census Bureau document appended to her brief entitled "Household Relationship of Persons by Race and Spanish Origin for Areas and Places: 1980." The statistics gathered there simply reflect a paucity of black females of the defendant's age residing in the Lewiston area.

*Id.* The Supreme Court has found "more substantial indications of the likelihood of bias" in those circumstances where racial issues are inextricably bound up with the case. *See Ham v. South Carolina,* 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973).

■ It cannot be said that racial issues lie at the heart of the case at bar. Nevertheless, guarding against the possibility of juror bias, the court directed a specific question to the venire designed to uncover racial prejudice. The immediate follow-up question, more broadly phrased, also sought to identify those potential jurors who, for *any reason,* felt they were unable to hear the case fairly. The court made the inquiry despite the fact that the circumstances surrounding the crimes charged were free of any racial overtones. There was no reason to suspect that the members of the panel had not responded truthfully to the questions put by the court. The additional questions urged by the defense counsel, while they may have had some possible bearing on racial prejudice, had nothing whatsoever to do with prejudice as it related to the crimes charged. *See State v. Robbins,* 401 A.2d at 164. After carefully reviewing the court's voir dire of the jury and the jury's responses, we detect no abuse of discretion in the trial justice's determination that the voir dire was sufficient to expose juror prejudice based on the defendant's race.

## II.

The defendant challenges the propriety of two evidentiary rulings by the trial court. The court permitted one of the investigating officers to testify as to the defendant's statement to him concerning a sexual affair she was conducting simultaneously with a father and son and allowed the State to cross-examine the defendant about her past employment as an exotic dancer. The defense counsel objected on grounds of hearsay and relevancy. On appeal the defendant also alleges a violation of M.R.Evid. 608(b).[4]

■ When the issue of entrapment is sufficiently raised in a case, it is incumbent upon the State to present sufficient evidence from which the jury could find beyond a reasonable doubt that the defendant is not an otherwise innocent person induced to commit the crime, the idea of which originated in the minds of the police. *State v. Matheson,* 363 A.2d 716, 722–23 (Me. 1976). "Innocent" means "the absence of a predisposition or state of mind that readily responds to the opportunity furnished by the officer or his agent to commit the forbidden act with which the accused is charged." *State v. Whitney,* 157 Conn. 133, 249 A.2d 238, 240 (1968) (*quoting* 21 Am.Jur.2d *Criminal Law* § 205 (1981)). Because the issue of entrapment raises questions as to the defendant's state of mind, evidence may be adduced by either side tending to show that state of mind. *State v. Whitney,* 249 A.2d at 240.

■ In the instant case, the presiding justice properly admitted the evidence. First, the defendant's statement concerning the father/son affair was not hearsay. It was clearly admissible under M.R.Evid. 801(d)(2) as an admission by a party-opponent. Second, both the statement and the information about the defendant's work as a "stripper" were relevant to ascertaining her state of mind or predisposition. The challenged evidence suggested or tended to suggest (1) that the defendant was sexually involved simultaneously with a father and son, and that the father was paying her money, (2) that she was experienced at

4. M.R.Evid. 608(b) reads in pertinent part:

(b) **Specific Instances of Conduct.** Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by *extrinsic evidence.* They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

soliciting men for drinks, and (3) that she had accepted money for dancing virtually nude in front of male customers. Although these facts do not establish that the defendant committed the crimes with which she was charged, it cannot be said they are irrelevant to a determination of her predisposition toward those crimes. Predisposition may be inferred from these facts of her background, and the trial justice did not err by admitting them. *See State v. Matheson*, 363 A.2d at 723. Because the evidence objected to was not offered to impeach the defendant, but rather to prove her predisposition substantively with respect to entrapment, Rule 608(b) does not apply.

### III.

While the jury was deliberating, the court received a communication from the foreman requesting reinstruction on entrapment. The court read again verbatim the instruction given earlier and inquired afterward whether this was satisfactory to assist the jury in continuing its deliberations. The foreman responded that it was. After a few moments, however, the foreman advised the court that one member of the jury wished to have a definition of the word "predisposition." The court defined the term for the jury.

Less than an hour later, the court received a second note from the foreman requesting still another reinstruction on entrapment. The note also asked that the "statement" of one of the Lewiston police officers be read back. After consultation with counsel and without objection, the court sent a note to the jury room asking that they be more specific as to the portion of the officer's extensive testimony they wished to hear. A responding note from the jury pinpointed in time the portion of the officer's testimony they wanted read.

On the jurors' return to the courtroom, the court advised the jury that the requested segment of the officer's testimony on direct examination, cross-examination and re-direct would be read. At that time one of the jurors requested that the read-back of the officer's testimony commence at a point in time earlier than had been previously requested in the jury's note to the court. The court reporter read the direct testimony of the officer from that earlier time. The court then made the following inquiry of the jury foreman:

> [W]e have read the direct examination of Officer Spencer ... I indicated to you clearly that any other portions of testimony are available. My question basically is, is the portion of testimony that has been read back sufficient to satisfy your request, or would you like further testimony including the entire cross-examination of Officer Spencer, being that examination conducted by [defense counsel]? The reason I am saying that, obviously you as jury members know precisely what it is you want read back, and I can only speculate on that. So rather than me make an absolute decision about what information you want read back, I am simply inquiring whether the information you have now had read back is sufficient or would you prefer the entire cross examination read back?

The foreman responded: "I believe at this time it is probably sufficient. I don't think there is ... anyone that would need any more than that." The court then stated:

> I want to clearly indicate to you, all members of the jury ... any portion of, or the entire cross-examination [and] redirect examination is available to you if you find that it's useful or necessary, it's available, and we are in effect willing to do it. We want to give you what you need to decide the issues.

The court then reinstructed the jury on entrapment. The defendant contends the failure of the trial justice to have the officer's cross examination read to the jury was an abuse of discretion. We disagree.

■ The decision of the trial justice in such matters is subject to review only for abuse of discretion. *State v. Engstrom*, 453 A.2d 1170, 1173 (Me.1982). The facts of the case at bar are remarkably similar to

those of *State v. McDonald*, 382 A.2d 553 (Me.1978), where the jury foreman, after hearing the direct testimony of a state trooper and after consulting with other members of the jury, declined the court's offer to read back the cross-examination.

 Although the record in the instant case does not reflect any formal "consultation" among the jurors, we note that the presiding justice was careful to express his willingness to entertain requests by any juror to read back any portion of the officer's testimony. We note as well that the record reflects there was good communication between the foreman and the other jurors. Individual juror requests were transmitted to the court. It follows that we cannot credit the defendant's assertion that the jurors were so in awe of the court that they did not understand their options. The record demonstrates that this jury repeatedly made its requests known to the court. The presiding justice committed no abuse of discretion by failing to order that the officer's cross-examination be read.

The entry is:

Judgment affirmed.

All concurring.