STATE of Maine

v.

Bruce WEYMOUTH.

Supreme Judicial Court of Maine.

Argued May 10, 1985.

Decided Aug. 9, 1985.

David Crook, Dist. Atty., Alan P. Kelley (orally), Deputy Dist. Atty., Augusta, for plaintiff.

Levey & Gleason, P.A., John Gleason (orally), Winthrop, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and SCOLNIK, JJ.

ROBERTS, Justice.

On August 23, 1984, a Superior Court jury in Kennebec County found Bruce Weymouth guilty on two counts of Gross Sexual Misconduct, 17–A M.R.S.A. § 253 (1983 & Supp.1984), and two counts of Unlawful Sexual Contact, 17–A M.R.S.A. § 255 (1983 & Supp.1984). On October 19, 1984, the court denied Weymouth's motion in arrest of judgment and entered a judgment on the verdict. On appeal Weymouth challenges the jury selection procedure and various evidentiary and procedural rulings as well as the sufficiency of the evidence to sup-port his conviction. We affirm the judgment.

### I.

The jury could have found the following facts beyond a reasonable doubt. Bruce Weymouth was married on November 29, 1974. At that time, his new wife had four children from a previous marriage. In 1975, the natural father gained custody of the two oldest children although a daughter and her younger brother continued to live with their mother and the defendant. In 1979, Weymouth and his wife began to experience marital difficulties exacerbated by Weymouth's excessive drinking and staying away from home. At approximately the same time, Weymouth began to make sexual advances to the victim, Weymouth's seven year old stepdaughter.

The victim testified at trial that the sexual activity began in September of 1979 and ended in August of 1981 when she confided in her mother. The activity took place approximately once or twice a week over the entire two year period on occasions when her mother was out of the house and her brother was either confined to his room or outside playing. The activity included an incident of attempted intercourse during the summer of 1980, although the girl was unable to recall the specific date of that incident. Weymouth was often intoxicated at the time of the incidents.

After Weymouth's wife learned of the abuse, she instituted divorce proceedings. She promised Weymouth that she would not reveal his sexual abuse of her daughter provided he gave her everything she wanted in the divorce. Weymouth's wife did reveal the accusations to the defendant's mother, but did not report it to the authorities until the Department of Human Services came to her home to interview her daughter in 1983. After her divorce, the victim's mother subsequently married another man (hereinafter Richard Roe). The two children continued to live with her.

In November of 1983, Michala Heald, a child protective worker interviewed the vic-

tim, first at school, and then at home. The girl related specific incidents, but was unable to specify any dates prior to 1981. She did tell Heald, however, that the abuse had been going on for a very long time. The girl also revealed to Heald that her new stepfather had sexually abused her.

After Heald's interview, Sergeant Richard Phippen interviewed both the girl and the defendant. Sergeant Phippen elicited a full confession of Weymouth's sexual abuse of his stepdaughter, characterized by touching, oral sex and two or three incidents of intercourse in which penetration occurred. Weymouth corroborated the girl and her mother in their allegations that he was often intoxicated and. acknowledged that he could not recall everything due to his intoxication.

The defense offered the testimony of a number of witnesses in an attempt to demonstrate a lack of veracity on the victim's part. The jury, of course, could disbelieve that testimony.

## II.

Initially, Weymouth presents a twofold challenge to the method of jury selection employed by the Superior Court. First, he argues that the court violated the mandates of M.R.Crim.P. 24(a) by denying him the opportunity to question prospective jurors further on subjects previously covered in the court's voir dire because they were "not fully covered." Second, he maintains that the court erred by refusing to question jurors individually in a private setting concerning possible exposure to child sexual abuse. We see no abuse of discretion in the circumstances of this case.

■ We have recently reaffirmed the broad discretion vested in the trial court concerning the conduct of juror voir dire. *See State v. Durost*, 497 A.2d 134 (Me. 1985). The determination whether a subject germane to a juror's qualifications has been adequately covered during the initial voir dire is appropriately left to the court's discretion. *A fortiori*, the trial court may reject the suggestion that questions should

be repeated because the responses were not adequate.

■ In *Durost* we expressly rejected the proposition that individual voir dire be mandated in all cases involving child sexual abuse. Although the judge must strike a delicate balance when dealing with matters of potential embarrassment to jurors, he need not inevitably resort to questioning "in a private setting." We conclude that the questions asked in general voir dire were adequate to reveal factors germane to juror qualification without exposing the responding juror to undue embarrassment. In sum, the presiding justice acted within the broad discretion afforded him in determining the scope of voir dire.

## III.

■ Weymouth also contends that the court erred in limiting his cross-examination of the victim and her mother relating to sexual abuse of the victim by Richard Roe, the girl's current stepfather. Weymouth's express purpose in pursuing this testimony was to establish a bias on the part of the victim and her mother in favor of her current husband. The bias was intended to demonstrate the falsity of the victim's accusations against Weymouth. The trial justice, however, ruled on several occasions that any relevance of the evidence was outweighed by the danger that it would confuse the jury by raising issues of Richard Roe's alleged conduct instead of that of Bruce Weymouth. The limitation of cross-examination was therefore proper under M.R.Evid. 403.

Defense counsel also attempted to cross-examine the mother about the possible inculpation of her current husband for things he had done to her daughter. This was an attempt to demonstrate that Richard Roe's confession to his wife of abusing the victim would be relevant in showing that the mother and daughter were falsely accusing the defendant to protect Roe. The court ruled, however, that no foundation had

been laid for the relevance of that testimony.[1]

Defense counsel also attempted to cross-examine Sergeant Phippen as to the details of Richard Roe's alleged abuse. Again, the court ruled that defense counsel had not established a proper foundation for relevance at that point. Importantly, Weymouth's own mother clearly established that the victim's allegations against Weymouth were made in 1981, well before the victim and her mother even knew Richard Roe. This diminishes the probative value of any evidence suggesting that the girl fabricated allegations against Weymouth in 1983 in order to shield Richard Roe. Moreover, the victim's mother used the abuse as a bargaining point in her divorce action against Weymouth before either of them knew Richard Roe.

 Weymouth next urges that there was a "recantation" in the form of a letter from the victim admitting that she was confused when she accused Roe of molesting her and that she apologized. The court refused to allow Richard Roe to so testify, relying upon *State v. White*, 456 A.2d 13 (Me.1983). Weymouth asserts that the court erroneously relied on *White* because *White* was not

> a case where the cross-examination was sought in order to show that the prosecutrix had previously ... made similar false complaints ....

*Id.* at 15.

The trial court, however, correctly determined that this was not a "recantation" as such, but merely Roe's allegation of a recantation. In fact, there was available evidence that Roe had confessed to the truth of the victim's allegation. The court properly engaged in a balancing test under M.R.Evid. 403, concluding that the probative value of the evidence was remote, collateral, and thereby outweighed by its potential for confusing the jury.

## IV.

 Defense counsel submits that he requested the State to produce any interview notes made by Sergeant Phippen concerning an interview with Richard Roe and that the State indicated that it had no knowledge of such an interview. The interview notes were subsequently provided to the defense by the State after the State had rested. At that point the defense brought the evidence to the court's attention and moved for a mistrial based upon a due process violation by the State under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Brady* held that irrespective of good or bad faith, suppression by the prosecution of evidence favorable to a defendant who has requested it, violates due process where such evidence is material to either guilt or punishment.

In *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Supreme Court set forth a three-part test for determining when reversal is appropriate under circumstances of nondisclosure. Weymouth asserts that the circumstances of the case at bar come within the second and third categories set forth in *Agurs*. Under the second category, the result must be reversed if the evidence *might* have affected the outcome. Under the third category, the result must be reversed only if the evidence "creates a reasonable doubt that did not otherwise exist." *Agurs*, 427 U.S. at 112, 96 S.Ct. at 2401. Weymouth contends that the instant case meets those two tests because the evidence was admissible under the exception discussed above in *State v. White*. Specifically, the recantation evidence could be used to impeach the credibility of the victim. Under either aspect of the *Agurs* test, however, the failure to reveal the evidence in the case at bar had no effect because the trial justice correctly ruled that the evidence was not admissible.

Thus, counsel was allowed to pursue the limited purpose of showing the mother's bias or interest in favor of Richard Roe.

---

1. The court subsequently allowed defense counsel to ask the mother if she had told her daughter that she was "dreaming" when the daughter made allegations of Richard Roe abusing her.

## V.

■ Weymouth asserts that the combination of nonspecificity as to the exact conduct alleged in each count together with the allegation that the enumerated offense was committed on one or more occasions, cause the indictment to fall short of the standard set forth in *State v. Crocker*, 435 A.2d 58, 68 (Me.1981). There, we held that an indictment is sufficient if

> a respondent of reasonable and normal intelligence, would, by the language of the indictment, be adequately informed of the crime charged and the nature thereof in order to be able to defend and, if convicted, make use of the conviction as a basis of a plea of former jeopardy, should the occasion arise.

*Id.* at 68. The crime charged in each count of the indictment is set out by statutory reference, both as to name of offense, title and section. As to the nature of the offense it is clear that the defendant is charged with Gross Sexual Misconduct and Unlawful Sexual Contact by virtue of the relative ages of the defendant and the victim and by virtue of the fact that the nature of the acts alleged are delineated under 17–A M.R.S.A. § 251(1)(B) & (C). Finally, the indictment leaves no possibility that Weymouth could be recharged for any sexual contact or sexual acts with the victim during the time periods set out, thereby removing any double jeopardy problems.[2] *See, e.g., State v. Hebert*, 448 A.2d 322, 327 (Me.1982).

■ Weymouth also urges that the State's response to a court ordered bill of particulars was insufficient. Although the record suggests that the response was incomplete, we are satisfied that the trial judge properly concluded that the original bill of particulars was so burdensome that full compliance was impractical. The trial judge therefore denied the defendant's motion to dismiss. Any lack of particularity must be considered in the context wherein young victims of sexual abuse are often unable to give the complete and vivid details of all offenses against them. Moreover, Weymouth has not demonstrated that he was prejudiced by the court's handling of this matter. *See, e.g., State v. Wedge*, 322 A.2d 328, 332 (Me.1974).

## VI.

■ At Weymouth's request we have reviewed the file of the Department of Human Services relating to this case. No material useful to the defense was withheld by the court's order of disclosure following its *in camera* inspection of the file. We have reviewed the record for sufficiency of the evidence and conclude that, despite the general nature of the victim's testimony, the jury was warranted in finding guilt beyond a reasonable doubt. Weymouth's confession contributed significant specificity to the evidence. No special instructions to the jury were requested and no objection was addressed to the charge as given. We cannot say the court's instruction as to the separation of the offenses contained any obvious error. Weymouth presents no other issue that requires discussion.

The entry is:

Judgment affirmed.

All concurring.

---

**2.** In *State v. Pierce*, 438 A.2d 247, 250 (Me.1981), we upheld the indictment against Pierce that utilized language couched in similarly general terms. Also, in *State v. Saucier*, 421 A.2d 57, 58 (Me.1980), we held that where the indictment tracks the language of the statute governing the offense charged, and that language, understood according to its natural import, sufficiently sets out facts constituting the crime, the defendant has no basis for complaint that he is uninformed or confused about the nature of the charges against him.