**STATE of Maine**

**v.**

**Ronald PROFENNO.**

Supreme Judicial Court of Maine.

Argued Sept. 18, 1986.

Decided Oct. 14, 1986.

Paul Aranson, Dist. Atty., Laurence Gardner, (orally), Asst. Dist. Atty., Portland, for plaintiff.

Daniel G. Lilley, P.A., Daniel W. Bates, (orally), Stephen W. Devine, Portland, for appellant.

Before NICHOLS, ROBERTS, WATHEN and SCOLNIK, JJ.

SCOLNIK, Justice.

The defendant, Ronald Profenno, appeals from a judgment entered on a jury verdict in Superior Court (Cumberland County) convicting him of Rape, 17–A M.R.S.A. § 252(1)(B) (1983). On appeal, the defendant contends that the presiding Justice erred by receiving in evidence certain hearsay statements of the victim. Finding no reversible error, we affirm the conviction.

## I.

At the time of the alleged rape, the complainant, Laurie Asher (a/k/a Laurie Profenno), and the defendant were married, but separated and in the process of getting divorced.[1] On the morning of No-

---

1. Title 17–A M.R.S.A. § 252(1)(B) (1983), which was in effect at the time of the alleged rape, provided as follows:

    1. A person is guilty of rape if he engages in sexual intercourse:

    . . . . .

    B. With any person, not his spouse, and the person submits as a result of compulsion, as defined in section 251, subsection 1, paragraph E.

Although "spouses" could not be victims of rape under that version of section 252(1)(B), a spouse "does not include a legally married person living apart from the actor under a defacto separation." 17–A M.R.S.A. § 251(1)(A) (1983). Thus, Asher, living apart from the defendant, was not his "spouse" under section 252(1)(B) (1983) at the time of the alleged rape.

We note that in 1985, the Legislature amended section 252(1)(B) deleting the phrase ",not his spouse,". P.L.1985, ch. 247, § 1 (effective

vember 13, 1984, the defendant and Asher engaged in sexual intercourse. The issue in dispute at trial was whether Asher submitted to sexual intercourse as a result of compulsion.[2]

In a chambers conference before trial, the parties agreed to the admission of evidence of alleged past physical and emotional abuse by the defendant to which Asher had been subjected. The State sought the admission of this evidence for the purpose of proving Asher's fear of the defendant— the compulsion element of the offense. The defendant agreed to its admission so long as he could introduce evidence of the parties' relationship to show that Asher was unreasonably fearful of her husband. Evidence of such past conduct in the parties' relationship was admitted at trial. The presiding Justice carefully instructed the jurors, both before and after the presentation of the evidence, that they could only consider this testimony to decide whether Asher had a reasonable fear of her husband, and could not rely on it to conclude that when the alleged rape occurred, he acted in conformity with past conduct.

The State's first witness was Asher's divorce attorney, Martin Ridge. She had telephoned Ridge the morning after the alleged rape. He testified that in the telephone conversation Asher told him the defendant "had forced her to have intercourse" the day before. Without stating his reasons, defense counsel objected to this testimony.[3] The presiding Justice overruled the objection. The State then questioned Ridge regarding Asher's reluctance to call the police about the incident. Defense counsel objected to this line of questioning, and a sidebar conference ensued. The State made an offer of proof that Ridge would testify that Asher told him she did not call the police because the de-

fendant threatened her. Defense counsel objected on the grounds that he had not received such a statement as part of the pretrial discovery. The presiding Justice allowed the question, and Ridge testified that Asher told him that she had not told anyone about the incident "because her husband had threatened her with physical harm if she told anybody about what happened."

The defendant's first witness was an emergency room physician, Dr. George Higgins, who had examined Asher the morning after the alleged rape. He testified that his examination of Asher was one that was routinely performed for victims of alleged sexual assault, and that all parts of Asher's body, including her vagina, were normal. On cross examination, the State asked Higgins to explain the reasons Asher gave for reporting to the emergency room. Without objection from defense counsel, Higgins testified that she told him she had been the victim of repeated sexual abuse by the defendant and that the day before the examination "she had been forced—under threat to comply with sexual activity she did not want."

## II.

The defendant argues that the above-described testimony of Ridge and Higgins was inadmissible hearsay. Because he failed to object to Ridge's testimony on hearsay grounds, however, his claim of error with regard to that testimony is not preserved. As we stated in *State v. Betts*, 491 A.2d 1169 (Me.1985), "[t]he overruling of a specific objection preserves nothing for review unless the evidence was inadmissible for the reason stated; if the reason stated was invalid, there is no error in admitting the evidence even though the objection would have been valid if made on some other ground." *Id.* at 1170, n. 1

September 19, 1985), thus eliminating entirely the spousal exception to the crime of rape.

**2.** Title 17-A M.R.S.A. § 251(1)(E) (1983) defines *compulsion* as "physical force, a threat of physical force or a combination thereof which makes a person unable to physically repel the actor or

which produces in that person a reasonable fear that death, serious bodily injury or kidnapping might be imminently inflicted upon that person or another human being."

**3.** The defendants trial counsel was different than his counsel on appeal.

(quoting 3 Glassman, *Maine Practice: Rules of Criminal Procedure Annotated* § 51.2 at 425 (1967)). *See also* Field & Murray, *Maine Evidence* § 103.2 at 5 (1976). The defendant gave no reasons for his first objection to the testimony of Ridge, and does not here press his second objection that was based on an alleged discovery violation. Thus, even assuming the correctness of the defendant's hearsay argument on appeal, we review the admissibility of that evidence only for obvious error. *See State v. Betts,* 491 A.2d 1169, 1170–71.

The obvious error standard of review also applies to the testimony of Higgins. Since the defendant did not object to that testimony, we review its admissibility only if it resulted in obvious error. M.R. Evid. 103(d); M.R.Crim.P. 52(b); *State v. True,* 438 A.2d 460, 468 (Me.1981).

Under the "obvious error" standard, we review the admissibility of controverted testimony "only when the error complained of is so highly prejudicial and so taints the proceeding as virtually to deprive the aggrieved party of a fair trial." *Id.* (quoting *State v. Langley,* 242 A.2d 688, 690 (Me. 1968)). In making such a determination we apply our "best judgment to all the circumstances of the case at hand to determine whether inadmissible evidence received at trial ... was in its probable effect upon the jury 'a seriously prejudicial error tending to produce manifest injustice.'" *Id.* at 467 (quoting *State v. Baker,* 409 A.2d 216, 219 (Me.1979)).

■ After reviewing the record of the trial proceedings in this case, we conclude that the defendant did not suffer manifest injustice as a result of the admission of the controverted testimony of Ridge and Higgins. By virtually stipulating before trial to the admission of evidence regarding alleged past physical and emotional abuses within the parties' relationship, the defendant cannot be heard to complain about the admission of that testimony. The adoption of this trial strategy imposed upon counsel the responsibility of prescribing the limits of the stipulation by objecting, with specificity, to testimony that fell outside its scope. Having agreed generally to the admission of evidence regarding past abuses in the parties' relationship, the defendant was obliged to guide the court more carefully by articulating appropriate objections and the legal grounds therefor when the controverted testimony was presented. *See State v. Thibodeau,* 317 A.2d 172, 182 (Me.1974). Given the evidentiary structure of the trial that was pre-planned by the parties' chambers agreement to achieve their respective tactical goals, we are unable to conclude that admission of what may be regarded as the cumulative testimony of Ridge and Higgins was obvious error.

■ The defendant also argues that other testimony admitted at trial concerning alleged past physical abuses perpetrated by the defendant against Asher should never have been presented to the jury. Although the defendant failed to object to any of this evidence, he now contends that its admission was obvious error. We disagree for the following two reasons. First, the nature of this testimony falls directly within the court's sanctioned pre-trial agreement of the parties. Second, the presiding Justice carefully instructed the jury with regard to the limited application of this evidence. *See State v. Nichols,* 495 A.2d 328, 330 (Me.1985). Accordingly, we conclude that the admission of this testimony was not obvious error.

The entry is:

Judgment affirmed.

All concurring.