**STATE of Maine**

**v.**

**Arthur LAMBERT, Jr.**

Supreme Judicial Court of Maine.

Argued June 3, 1987.

Decided July 30, 1987.

David W. Crook, Dist. Atty., William Baghdoyan (orally), Asst. Dist. Atty., Skowhegan, for plaintiff.

David M. Sanders (orally), Rowe & Sanders, Livermore Falls, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS,* GLASSMAN, SCOLNIK and CLIFFORD, JJ.

GLASSMAN, Justice.

The defendant, Arthur Lambert, Jr., appeals from a judgment of the Superior Court, Somerset County, entered on a jury verdict finding him guilty of gross sexual misconduct in violation of 17–A M.R.S.A. § 253(2)(B) (Supp.1986) (Class C). The defendant contends that (1) the trial court abused its discretion in the voir dire of prospective jurors, and (2) it was obvious error to admit evidence of the victim's heterosexuality. We disagree and affirm the judgment.

I

The crucial evidence at trial consisted of the conflicting testimony of the victim (hereinafter referred to as John Doe) and the defendant. Sixteen-year-old John Doe testified that while in the defendant's car the defendant compelled him to allow the defendant to place his mouth on the penis of John Doe. The 33–year–old defendant testified that after John Doe had pulled his own pants down and told the defendant he could do what he wanted, the defendant briefly touched John Doe's penis, then reconsidered and drove him home.

Jury selection began with each prospective juror responding in writing to a confidential written questionnaire consisting of the following:

> Have you or a friend or a close relative had any involvement in a sexual abuse matter as a victim, witness, accused or in any other way? Would you for any reason find it difficult to be fair and impartial in a case involving evidence of sexual abuse?

The court excluded from the pool of prospective jurors anyone that answered either question in the affirmative. After a hearing on the defendant's request for an opportunity to ask specific questions as to possible bias against homosexuals by individual voir dire of the remaining prospective jurors, the court denied the request. As a part of its general voir dire of the remaining prospective jurors, the court posed the following question:

> It's been brought to my attention that the evidence might disclose or suggest that the defendant in this case is a homosexual or has been involved in homosexual behavior. In the event that the evidence should show or suggest that, is there anybody on the panel who because of personal, moral or religious beliefs or for any other reason would find it difficult to be fair—to be completely fair and impartial and to decide this case based solely upon the evidence produced in the courtroom and the Court's instructions to you? If it should be disclosed that this defendant has been involved in homosexual behavior or is a homosexual or suggested that he may have homosexual tendency or has been so involved, would participate in the final decision.

* Roberts, J., sat at oral argument and participated in the initial conferences, but did not

that—either because of any experience that anyone of you had or any moral or religious belief or attitude that you have—make it difficult for you to be completely fair and impartial and to decide this case based entirely on the evidence and the Court's instruction to you?

Receiving no response, the court then asked:

[I]s there anybody on this panel who knows of any reason whatsoever why you could not be fair and impartial and decide this case solely on the evidence produced in the courtroom and the Court's instructions to you? Do you know of any reason why you could not be fair and impartial?

Again, no one responded.

On appeal the defendant asserts that the trial court abused its discretion by refusing to allow the defendant to individually voir dire the prospective jurors concerning possible bias against homosexuals and in admitting evidence of the heterosexuality of John Doe.

## II

 The defendant first asserts that he was entitled to have the potential jurors interrogated individually because they would hesitate to admit to bias in open court. The presiding justice has discretion to determine the need for individual voir dire. *See State v. Durost*, 497 A.2d 134, 136 (Me.1985). Individual voir dire may be appropriate for questions relating to a potential juror's direct or indirect involvement in any matter similar to that to be heard by the selected jurors. *See, e.g., State v. Moody*, 486 A.2d 122 (Me.1984) (whether juror victim of child sexual abuse). But individual voir dire is not required in every case. *See, e.g., State v. Weymouth*, 496 A.2d 1053, 1055 (Me.1985), and *State v. Durost*, 497 A.2d at 136–37 (exposure to child sexual abuse); *State v. Waterhouse*, 513 A.2d 862, 863–64 (Me.1986) (opinions on satanism). In this case, the potentially embarassing questions concerning a personal involvement with sexual abuse, presumably including sexual abuse by a homosexual, were asked of the potential jurors in the

confidential questionnaire. The additional questions asked by the court did not contain a potential for such undue embarrassment to a potential juror as to require individual voir dire. The trial court did not abuse its discretion by questioning the array *en masse*.

 The defendant also argues that the initial voir dire by the court did not adequately cover the subject of possible anti-homosexual bias. The trial court has considerable discretion over the scope of voir dire. *See State v. Durost*, 497 A.2d at 136; *State v. Turner*, 495 A.2d 1211, 1212 (Me. 1985). We have recognized that the existence of anti-homosexual bias in our society requires voir dire directed at such prejudice if the evidence might suggest that the defendant is homosexual. *State v. Lovely*, 451 A.2d 900 (Me.1982).

In this case there was evidence of the defendant's homosexuality. Moreover, the issue of homosexuality was "inextricably bound up" with the crime alleged. *See State v. Turner*, 495 A.2d at 1213. The presiding justice squarely addressed the potential for anti-homosexual bias by asking the array whether evidence of the defendant's homosexuality would affect any potential juror's ability to decide the case fairly and impartially based solely on the evidence provided in the courtroom and the court's instruction as to the applicable law. This was followed by a general question to elicit from the prospective jurors if there was "any reason" any one of them felt unable to act fairly and impartially. No one of the prospective jurors responded affirmatively to either question. "The determination whether a subject germane to a juror's qualifications has been adequately covered during the initial voir dire is appropriately left to the court's discretion." *State v. Weymouth*, 496 A.2d 1053, 1055. The questions suggested by the defendant were simply variations of the court's questions. The court did not abuse its discretion in not allowing continued questioning concerning any anti-homosexual bias of the potential jurors.

## III

The defendant also asserts that admission of evidence of the victim's heterosexuality constituted obvious error requiring reversal. During the State's case in chief John Doe, his girlfriend, a male friend, and his mother all testified that John Doe had a girlfriend and had never shown any interest in homosexuality. At no time did the defendant object to this evidence. Accordingly, we review this record only for obvious error affecting the defendant's substantial rights. M.R.Crim.P. 52(b); M.R. Evid. 103(d).

■ We agree with the defendant that the evidence of John Doe's heterosexuality was not properly admissible in this instance. *See* M.R.Evid. 404(a).[1] "The 'obvious error' test calls for the reviewing court to apply its best judgment to all the circumstances of the case at hand to determine whether inadmissible evidence received at trial without objection was in its probable effect upon the jury 'a seriously prejudicial error tending to produce manifest injustice.'" *State v. True*, 438 A.2d 460, 467 (Me.1981) (quoting *State v. Baker*, 409 A.2d 216, 219 (Me.1979)).

■ In the instant case the jury heard the closely matched testimony of John Doe and the defendant as to what occurred up to the time the defendant parked his car. John Doe testified that after parking the car the defendant had locked the car door, held John Doe around the neck while threatening him, unzipped John Doe's pants and while John Doe was crying committed the sexual act. The defendant denied the sexual act. He admitted, however, sexual touching of John Doe but contended that the touching had been consensual. In testifying as to the touching, the defendant stated, "It's like getting candy from a baby...." He also admitted he had denied to the police any touching of John Doe.

Clearly the issues in this case were whether the defendant had committed a sexual act as defined by section 251(1)(C),[2] and, if so, whether John Doe had consented to that sexual act.

We cannot conclude on this record that the erroneously admitted evidence deprived the defendant of the fair trial to which he was entitled. *See State v. Profenno*, 516 A.2d 201 (Me.1986).

The entry is:

Judgment affirmed.

McKUSICK, C.J., and CLIFFORD, J. concurring.

SCOLNIK, Justice, with whom NICHOLS, Justice, joins, dissenting.

Although I agree that the presiding justice acted within his discretion in the conduct of the jury voir dire examination, I would vacate the conviction because I conclude that the admission of evidence of John Doe's heterosexuality, in violation of M.R.Evid. 404(a), was obvious error.

Recognizing that the admission of the evidence in question was improperly received, the court, nevertheless, concludes that this unpreserved error failed to meet the "obvious error" test. It is with this conclusion that I strongly disagree. The defendant's guilt or innocence in this case turned on whether John Doe consented to the sexual act in question; the victim's lack of consent being an essential element of the crime charged. To determine this critical issue the jury was required to decide which of the two, John Doe or the defendant, was telling the truth on the witness stand. In what should have been an oath against oath "swearing contest" for the jury to resolve, several witnesses were permitted to give testimony of John Doe's heterosexuality. Because the jury was

---

1. M.R.Evid. 404(a) provides that "Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion" except a pertinent trait of his character offered by an accused or a witness's character traits concerning credibility.

2. 17–A M.R.S.A. § 251(1)(C)(1) (Supp.1986) provides in pertinent part:
 C. "Sexual act" means:
 (1) Any act between 2 persons involving direct physical contact between the genitals of one and the mouth or anus of the other, or direct physical contact between the genitals of one and the genitals of the other;

thus permitted to infer that this heterosexual victim would not have freely consented to a homosexual act, the balance in the credibility contest was prejudicially tipped against the defendant. The jury was permitted to do exactly that which the rule of evidence forbade: it could infer that a trait of John Doe's character, his alleged heterosexuality, proved that he acted in conformity with that trait by not consenting to a homosexual act on this particular occasion. In a one-on-one credibility competition for the jury's acceptance of testimony, I cannot imagine a clearer instance of "a seriously prejudicial error tending to produce manifest injustice." *See State v. True*, 438 A.2d 460, 467 (Me.1981).

The court, in recounting portions of the testimony of the two principal parties, appears to employ a sufficiency of the evidence analysis. In the context of the obvious error standard, such a review of the evidence is inappropriate. The crucial issue is a narrow one: whether the erroneous admission into evidence of testimony from four witnesses regarding John Doe's heterosexuality so tainted the proceedings as virtually to deprive the defendant of a fair trial. *Id.* at 468.

Only if the testimony of John Doe is believed on the consent issue can it be concluded that no obvious error has occurred. It is exactly that credibility question that is unfairly skewed by the improper admission of the prejudicial testimony. In the circumstances of this case, where proof beyond reasonable doubt of an essential element of the crime, John Doe's con-

sent, turned on the jury's resolution of conflicting testimony between the defendant and the victim and where inadmissible testimony of other witnesses was in all probability used by the jury to infer the existence of that element, I conclude that the defendant was deprived of a fair trial.

As we said in *State v. Smith*, 472 A.2d 948, 950–51 (Me.1984):

This Court has used various verbal formulations to explain what constitutes obvious error—e.g., "error ... so highly prejudicial and so taint[ing of] the proceeding as virtually to deprive the aggrieved party of a fair trial," *State v. Langley*, 242 A.2d [688] at 690 [Me.1968]; "seriously prejudicial error tending to produce manifest injustice," *State v. Baker*, 409 A.2d 216, 219 (Me.1979); and "injustice done to the defendant ... so great the Law Court cannot in good conscience let the conviction stand." *State v. True*, 438 A.2d 460, 469 (Me.1981).

Under any one or all of these standards, I conclude that the admission into evidence of testimony regarding John Doe's heterosexuality constituted obvious error.

I would vacate the defendant's conviction and remand this case to the Superior Court for a new trial.