**STATE of Maine**

v.

**Calvin WOODBURN, Sr.**

Supreme Judicial Court of Maine.

Argued Jan. 5, 1989.
Decided May 30, 1989.

William R. Anderson, Dist. Atty. David M. Spencer (orally), Leane Zainea, Asst. Dist. Attys. Wiscasset, for State.

William P. Shumaker (orally), Verrill & Dana Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

GLASSMAN, Justice.

The defendant, Calvin Woodburn, Sr., appeals from judgments of the Superior Court (Lincoln County, *Bradford, J.*) entered on jury verdicts finding him guilty of gross sexual misconduct, 17–A M.R.S.A. § 253 (Supp.1988), and unlawful sexual contact, 17–A M.R.S.A. § 255 (Supp.1988). Woodburn contends that the trial court erred 1) in refusing to permit individual voir dire of the jurors, 2) by excluding expert testimony concerning the ability of the victim to distinguish truth from falsehood, and 3) in finding the victim competent to testify. Woodburn also asserts that the evidence was insufficient to sustain the convictions. We affirm the judgments.

I

A jury would have been warranted in finding, *inter alia,* the following facts: In June 1985 after the separation of Woodburn from his wife, Woodburn and his two sons moved into his mother's three-room home. Due to the limited living space in the home, Woodburn and his elder son, then six years old, shared a bed. At trial, the child testified that at night Woodburn subjected him to a number of sexual acts and incidents of sexual contact. Woodburn denied the allegations. He testified that he often awakened his son in the night to determine whether his son had urinated in the bed. In the fall of 1986, the child was placed in a foster home where he disclosed the sexual activity at issue.

The jury found Woodburn guilty of the charged offenses, and Woodburn appeals.

II

■ Initially, Woodburn contends that the trial court committed reversible error in refusing to permit Woodburn's counsel to conduct an individual voir dire of the members of the jury panel. We disagree.

As a part of the voir dire, the trial court utilized a written confidential questionnaire, answered by the jurors under oath, that addressed the area of sexual abuse. A juror who responded affirmatively to any of the questions was excused for cause. Using seven of the nine questions proposed by Woodburn, the court also conducted an oral voir dire. As a group, the court questioned those jurors who had responded in the negative to the written questions as to other areas of potential bias. The remaining two questions proposed by Woodburn were deemed by the court to be repetitive and were not asked of the jury panel.

Woodburn argues that the use of the written questionnaire without further individual oral voir dire in the area of sexual abuse denied him the opportunity to evaluate the demeanor of each juror who gave negative answers to the questionnaire. He also argues that the court's refusal of two of his proposed questions was error. We find no merit in either argument.

■ "The purpose of a voir dire examination is to detect bias and prejudice in prospective jurors, thus ensuring that a defendant will be tried by as fair and impartial a jury as possible." *State v. Lovely,* 451 A.2d 900, 901 (Me.1982). Considerable discretion over the conduct and scope of juror voir dire is vested in the trial court, which has the responsibility of balancing the competing considerations of fairness to the defendant, judicial economy, and avoidance of embarrassment to potential jurors. *State v. Waterhouse,* 513 A.2d 862, 863 (Me.1986); *State v. Robbins,* 401 A.2d 161 (Me.1979). "On appeal, the decision of the trial court will be reversed only for an abuse of discretion." *State v. Durost,* 497 A.2d 134, 136 (Me.1985). Although cases involving allegations of sexual abuse of a child are potentially ripe for juror bias, we have expressly rejected the proposition that individual voir dire be mandated in all such cases. *Id. See State v. Weymouth,* 496 A.2d 1053 (Me.1985) (trial justice need not inevitably resort to private questioning in a case of sexual abuse of a minor); *see also State v. Lambert,* 528 A.2d 890, 892 (Me. 1987) (trial court did not abuse its discretion by refusing to allow defendant to individually voir dire prospective jurors concerning possible bias against homosexuals).

In the instant case we conclude there was no abuse of discretion in the trial court's decision to put in written form those questions dealing with matters of potential embarrassment to the jurors. An affirmative response to any question required the revelation by a juror of sensitive personal or family history. This form of inquiry did not impair the defendant's ability to discover prejudice, if any, that a potential juror may have had concerning the subject matter of the charges against Woodburn. Nor did the court abuse its discretion in refusing two of the questions proposed by Woodburn for the oral voir dire of the jury. Our review of the record discloses the questions were clearly repetitive of questions posed in the written questionnaire. *State v. Weymouth,* 496 A.2d at 1055; *see also State v. Lambert,* 528 A.2d at 892.

### III

Woodburn also contends that the trial court erred in excluding the opinion of Woodburn's expert witness, Paul Sobchuk, a clinical psychologist, that the victim was unable to distinguish truth from falsehood. We disagree.

Over the objection of the State,[1] Woodburn sought to introduce the testimony of Sobchuk that he had met with the child for twenty-four, one-hour sessions between September 1985 and June 1986 for reasons not connected with this case, although coincidentally throughout the period of the alleged abuse. The child had been referred to Sobchuk for the purpose of evaluating the child's competency because he was "acting out" and not doing well at school. Sobchuk had questioned the child on several topics including fighting, relationships with other children and disciplinary action at home. Sobchuk had then checked with others to determine the accuracy of the child's responses. By this method Sobchuk had concluded that the child had lied on a number of occasions; that he could be easily led and would lie to please an examiner. Such behavior, he opined, demonstrated an "inability to distinguish truth from false-

hood" which was a "medically recognized syndrome somewhat akin to" what is listed in the Diagnostic and Statistical Manual of Mental Disorders III (DSM III) as "conduct disorder, unsocialized aggressive." The DSM III was not introduced into evidence nor was there any other reference to it by Sobchuk. He stated that the child had not discussed any sexual abuse during his sessions with Sobchuk, but had the child done so he "would still have strong suspicions of whether or not [the child] had been sexually abused," because of his experience with the child.

Relying primarily on M.R.Evid. 404(b) and 702 and the discretionary power of the court pursuant to Rule 403, the trial court excluded that portion of Dr. Sobchuk's testimony that proffered his expert opinion relating to the child's "inability to distinguish truth from falsehood."

Here, the testimony in issue is the opinion of Sobchuk, based on specific incidents of conduct of the child, that the child had lied in the past and that he was unable to distinguish truth from falsehood. This proffered opinion clearly embraced the ultimate issue to be decided by the jury as to the truthfulness of the child's testimony relating to his alleged sexual abuse by Woodburn. Thus, the issue presented for review is whether the trial court properly determined the testimony was inadmissible under the Rules of Evidence.

If otherwise admissible, M.R.Evid. 704 provides for the admissibility of testimony in the form of an opinion on an ultimate issue to be decided by the jury subject to Rules 701 (opinion of witness not testifying as expert) and 702 (opinion of expert witness) that the opinion must be helpful to the trier of fact; and subject further to the discretion of the court, under Rule 403, to exclude opinions if the probative value is outweighed by the danger of unfair prejudice or confusion, or would be a waste of time, or would mislead the jury. *See* R. Field & P. Murray, *Maine Evidence* § 704.1 (2d ed.1987).

1. The State did not object to Paul Sobchuk's qualification as an expert.

Under M.R.Evid. 702, before admitting expert testimony the trial court must consider (1) whether the matter is beyond common knowledge so that the untrained layman will not be able to determine it intelligently and (2) whether the witness is qualified to give the opinion sought. R. Field & P. Murray, *supra,* § 702.1 at 263; *State v. Boutilier,* 426 A.2d 876, 878 (Me.1981).

■ Although the expert need not be able to state his opinion with any special degree of certainty, he must be able to provide some insight beyond the kind of judgment an ordinarily intelligent juror can exert. *See State v. Fernald,* 397 A.2d 194, 197 (Me.1979); *State v. Lewisohn,* 379 A.2d 1192, 1203 (Me.1977). In determining whether the proffered testimony will be relevant and helpful, the trial court may consider whether the scientific matters involved in the testimony have been generally accepted and whether the testimony has been demonstrated to have sufficient reliability as a predictor of untruthfulness. *See State v. Black,* 537 A.2d 1154 (Me.1988); *State v. Philbrick,* 436 A.2d 844 (Me.1981).

■ Rule 404(b) provides that evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that on a particular occasion he acted in conformity therewith. The credibility of a witness may be attacked by evidence of his reputation for truthfulness or untruthfulness rather than by evidence of his character generally, M.R.Evid. 608(a), or, within limits, and subject to the discretion of the court, on cross-examination by questioning a principal witness, such as the child victim in this case, or a character witness about specific incidents of conduct. M.R.Evid. 608(b).

Throughout the extensive voir dire Sobchuk never identified the "medically recognized syndrome" to which he alluded, other than by the vague reference that it was "akin to conduct disorder, unsocialized aggressive." He at no time stated whether the "syndrome" was listed in any DSM used by mental health professionals or what, if any, were the criteria for its diagnosis. Sobchuk's testimony demonstrates no scientifically accepted basis for determining that the child was unable to distinguish truth from falsehood. The fact that he may have lied on unrelated occasions was not demonstrated to be a reliable predictor that he was lying on this occasion. *See State v. Black,* 537 A.2d at 1157. Thus, the trial court could properly determine that the testimony did not meet the requirements of M.R.Evid. 702 and, therefore, was inadmissible under M.R.Evid. 704. The proffered testimony was not offered as evidence of the child's reputation for truthfulness, M.R.Evid. 608(a), nor were the specific incidents of the child's past lying elicited through the cross-examination of the child or of a character witness. M.R.Evid. 608(b). The effect of the testimony, if admitted, would be to evade the limitations of M.R.Evid. 404(b) and 608(a) and (b). *See State v. Arnold,* 421 A.2d 932 (Me.1980) (psychologist's testimony regarding defendant's truthfulness was inadmissible character evidence). Accordingly, we hold that the trial court did not abuse its discretion in excluding the proffered opinion of Dr. Sobchuk as to the truthfulness of the child.

### IV

■ Woodburn next contends that the court erred in its determination that the eight-year-old child victim was competent to testify.[2] We disagree. As we stated in *State v. Hussey,* 521 A.2d 278 (Me.1987), we review the trial court's finding that a witness has met the requirements of Rule 601(b) to determine if such finding is clearly erroneous.[3] The record in the instant

---

**2.** Woodburn did not offer the testimony of Dr. Sobchuk to challenge the child's competence as a witness.

**3.** Prior to our decision in *Hussey* and in reliance on cases decided before the promulgation of *Rule 601* on February 2, 1976, we mistakenly set forth the standard for appellate review as being the determination of whether the trial court had abused its discretion. *See State v. Emery,* 434 A.2d 51, 52 (Me.1981); *State v. Vigue,* 420 A.2d 242, 246 (Me.1980), *State v. Pinkham,* 411 A.2d 1021, 1024 (Me.1980).

case discloses sufficient evidence to support the trial court's finding that the child demonstrated an ability to express himself and make himself understood to the court and jury and had a sufficient understanding of the duty to tell the truth and was therefore competent to testify. M.R. Evid. 601(b); *State v. Hussey*, 521 A.2d at 280.

Finally, Woodburn challenges the sufficiency of the evidence supporting his convictions. Our review discloses that viewing the evidence in a light most favorable to the prosecution, any trier of fact rationally could find beyond a reasonable doubt every element of the offenses charged. *State v. Barry*, 495 A.2d 825 (Me.1985).

The entry is:

Judgments affirmed.

McKUSICK, C.J., and ROBERTS, WATHEN and CLIFFORD, JJ., concur.

HORNBY, Justice, dissenting in part.

It is disturbing to me that in evaluating the credibility of an eight-year-old boy, the critical and uncorroborated witness in this case, the jury is not entitled to hear the opinion of an independent clinical psychologist who, wholly apart from this criminal prosecution, had been assessing the boy's truthfulness by checking his stories over a nine-month period. I agree with the Court that the Maine Rules of Evidence seem to compel that result, but in doing so they are fundamentally unfair.

I do not agree with the Court's faulting of Dr. Sobchuk's testimony under M.R. Evid. 702 for what is basically an inadequate foundation—*i.e.* that the defense did not qualify Dr. Sobchuk to give the opinion sought. Here, the State made no objection on this ground at trial and the trial court made a clear finding that Dr. Sobchuk *was*

qualified. Rule 702, though mentioned in passing, was simply not the basis for the trial court's ruling excluding this testimony,[1] the transcript demonstrates that neither trial counsel nor the trial court considered it to be an issue, and the defendant therefore never had reason to beef up his proffer.

The reason Dr. Sobchuk's testimony is inadmissible under the Maine Rules of Evidence is that the Rules simply do not permit opinion testimony on credibility. *See* M.R.Evid. 608, 405; *State v. Arnold*, 421 A.2d 932, 937–38 (Me.1980). In this respect, they differ from both the federal model and an earlier draft of the Maine Rules.[2] *See* Fed.R.Evid. 405(a); M.R.Evid. 405(a) (Tent. Draft Dec. 1974). As Maine commentators have observed, Maine Rule 405(a) "does not, as the Federal Rule does, sanction opinion testimony.... [T]he only allowable method of proof is by reputation evidence." Field & Murray, *Maine Evidence* § 405.1 at 115 (1987). The Advisory Committee found "some justification" for permitting opinion testimony, reasoning that there is not much difference between saying that someone's reputation is good and actually vouching for the defendant. The Committee ultimately excluded it, however, because of "the risk that wholesale allowance of opinion testimony would tend to turn a trial into a swearing contest between conflicting character witnesses." M.R.Evid. 405 Advisory Committee Note published Feb. 2, 1976, Field & Murray at 114. This has turned out to be an unfounded concern. There is no evidence that federal trials, where opinion testimony on credibility is permitted, have turned into swearing contests of this sort. Maine Rule of Evidence 403, identical to Federal Rule of Evidence 403, provides sufficient control to the trial courts to avoid such a develop-

1. The trial court reasoned that Dr. Sobchuk's testimony went to the "ultimate issue," that Rules 403 and 704 together gave him discretion whether to admit such testimony, and that "this borders so closely upon the testimony on the ultimate issue as to the credibility of Calvin Woodburn, Jr., that the testimony of Doctor Sobchuk is excluded."

2. Maine's final version followed the approach in the Federal Rules taken by the original House Bill, which eliminated opinion testimony from the United States Supreme Court's proposed version. Subsequently, however, admissibility of opinion testimony was reinstated on the floor of the House and approved by the Conference Committee and thus reappeared in the Federal Rules. 2 J. Moore, *Moore's Federal Practice*, § 405.2 at 109 (Rules Pamph.1989).

ment. As a result of the blanket exclusion, on the other hand,[3] opportunities for challenging the credibility of a child witness are severely limited. The evidence of reputation permitted by Rules 405(a) & 608(a) will seldom be available in the case of a young child, particularly if the child has moved frequently as in troubled families. (Here the father testified that he and the children moved 15 to 20 times in the years before Calvin, Jr. was six or seven years old.) Although Rule 608(b) permits a lawyer, with the specific permission of the court, to inquire on cross-examination concerning specific instances that may bear upon credibility or untruthfulness, that provision obviously is of small assistance to a lawyer dealing with an eight-year-old on the stand in front of a jury. In short, without opinion testimony there really is no effective way to deal with the credibility of a child witness except through separate eyewitness testimony to the incident, something that is almost always unavailable in sexual abuse allegations.

I believe most ordinary citizens would consider Dr. Sobchuk's opinion highly relevant in evaluating the testimony of eight-year-old Calvin, Jr. The Department of Human Services referred the boy to Dr. Sobchuk because he was "acting out at school." One of the principal problems reported was that Calvin, Jr. was lying both at school and at home. Dr. Sobchuk conducted hour-long sessions with the youngster about three times a month for a total of 24 sessions running until June of 1986. (Calvin made his first accusation concerning his father in November of 1986 and the trial occurred in November of 1987.) Dr. Sobchuk gained Calvin, Jr.'s confidence and engaged him in conversation about a wide range of matters. He then investigated the truth of a large number of incidents reported by the boy in various categories. He found that "Calvin, with few exceptions, was not telling the truth." On Calvin, Jr.'s ability to separate fact from fiction,

A. He was highly suspect. He was often times mixing facts and fantasy. He aimed to please the examiner in terms of whatever it is he felt the examiner wanted to hear.

Q. Now is there a concept called pathological lying?

A. There is a concept called pathological lying.

Q. Did you make any conclusion about that vis-a-vis Calvin Woodburn, Jr.?

A. That's a rather harsh concept to draw in light of Calvin. However, for the most part I think it applies in that he will tell lies, show very little remorse or not have any—show very little signs or understanding of the consequences.

Dr. Sobchuk's negative opinion on credibility was excluded concerning a young boy who, during his voir dire for competence, (in addition to appropriate testimony) answered yes to the two questions "If you say something and it helps you out, does that make it true?" and "if you know what somebody wants you to say and you say it, does that make it true?"[4] Regardless of whether Dr. Sobchuk's opinion testimony is considered expert or lay, scientific or amateur,[5] it is difficult to understand why this

3. We have had previous difficulty with the wholesale exclusion of opinion testimony. In *State v. Willoughby*, 507 A.2d 1060 (Me.1986), we avoided the exclusion by distinguishing "a generalized description of [the defendant's] disposition in respect to a general trait, such as honesty" (inadmissible) from "medical testimony concerning a 'puffing syndrome,' which ... 'cannot fairly be called "character evidence" within the meaning of the rule'" (admissible) although the latter went directly to credibility. *Id.* at 1063–64. The commentators have been unable to square the decision with Rules 404 and 608. Field & Murray, *Maine Evidence* § 404.1 at 108 (1987).

4. Calvin also answered questions on voir dire when he had no way to know the truth (color of the cross-examining lawyer's undershirt and socks and what he had in his hand).

5. I recognize that some authors and courts have rejected expert testimony on credibility issues because of their surmise that it will overwhelm or invade the province of the jury. *E.g.*, Myers, *The Child Witness: Techniques for Direct Examination, Cross–Examination, and Impeachment,* 18 Pac.L.J. 801, 842–48 (1987), and cases cited therein. That factor may have partly influenced the trial court here, *see* note 1 *supra*. I am unpersuaded by the generalized fear that properly instructed juries cannot responsibly assess

opinion, developed in a nonpartisan context over several months of investigation, is inferior to the standard testimony concerning a witness's reputation for credibility that would be admissible under Rule 608(a).[6]

I believe that the exclusion of Dr. Sobchuk's opinion testimony,[7] in the context of this trial, was fundamentally unfair and requires that the judgment be vacated and a new trial be granted.

---

psychiatric or psychological testimony on credibility. Unlike our pre-Rules case of *State v. Lewisohn*, 379 A.2d 1192, 1203–04 (Me.1977), Dr. Sobchuk's testimony was specifically not offered on whether Calvin, Jr. was testifying accurately at trial. There was thus no threat to the jury's role in determining whether Calvin, Jr. was actually telling the truth on the witness stand.

**6.** *Accord*, 7 Wigmore, *Evidence* § 1986 p. 244 (1978) (footnote omitted):

The Anglo–American rules of evidence have occasionally taken some curious twistings in the course of their development; but they have never done anything so curious in the way of shutting out evidential light as when they decided to exclude the person who knows as much as humanly can be known about the character of another, and have still admitted the secondhand, irresponsible product of multiplied guesses and gossip which we term "reputation."

**7.** The specific incidents on which the opinion was based would be admissible only on cross-examination. M.R.Evid. 608(b).