STATE of Maine

v.

**Richard PHILBRICK.**

Supreme Judicial Court of Maine.

Argued Nov. 17, 1989.
Decided Dec. 7, 1989.

R. Christopher Almy, Dist. Atty., Philip C. Worden (orally), Asst. Dist. Atty., Bangor, for the State.

Mark A. Perry (orally), Archer & Perry, P.A., Brewer, for defendant.

Before McKUSICK, C.J., and
WATHEN, GLASSMAN, CLIFFORD
and HORNBY, JJ.

McKUSICK, Chief Justice.

Throughout 1987, a rash of burglaries plagued Glenburn, Levant, and Exeter. Bruce Stillings, a suspect arrested for the crimes, told the police that defendant Richard Philbrick had received some of the stolen property. The police obtained a search warrant for Philbrick's residence and outbuildings, specifying four items to be seized. During the search, however, police seized over 70 items that they believed had been stolen in the burglaries.

In 1988 Philbrick was indicted by a grand jury on three counts of receiving stolen property. At trial in the Superior Court (Penobscot County, *Beaulieu, J.*) the State voluntarily dismissed Count III relating to stolen electronic goods and the court directed a verdict of acquittal on Count II relating to a firearm allegedly stolen from Kevin Whalen of Exeter. On Count I involving a shotgun stolen from David Clossun of Levant, however, the court on a jury verdict convicted Philbrick of the crime of receiving stolen property. The Clossun gun had not been specified in the search warrant but was seized by the police offi-

cers in the process of executing the warrant. Philbrick argues on appeal that the seizure of the Clossun gun was unconstitutional for three reasons and that his pretrial motion to suppress should have been granted. Finding no merit in any of Philbrick's contentions, we affirm the conviction.

■ Philbrick first argues that the police executed the search warrant in such an unreasonable manner that they conducted an unconstitutional general search of his premises. The transcript of the suppression hearing shows that at the outset Philbrick did indeed state this argument to the suppression justice (*Beaulieu, J.*). In his opinion refusing to suppress the evidence seized in the Philbrick search, however, the justice made no findings of fact or conclusions of law on the issue, and Philbrick did not ask for any. We must assume that the suppression justice found for the prosecution upon all issues of fact necessarily involved in his denial of defendant's motion, *see State v. Fournier*, 554 A.2d 1184, 1187 (Me.1989), and that the justice knew the law and applied it correctly, *see State v. Powers*, 489 A.2d 4, 6 (Me.1985). Philbrick fails to carry his burden of bringing a record to this court that shows clear error in the suppression justice's rejection of his "general search" argument. On this record nothing compelled the justice to condemn the breadth of the search of the Philbrick premises as unreasonable.

■ Contrary to Philbrick's second contention, the firearms specified in the warrant were adequately particularized because the affidavit on the printed request for warrant form described them by make and serial number. *See State v. Sweatt*, 427 A.2d 940, 949 (Me.1981).

■ Third and last, Philbrick argues that the police lacked probable cause to seize the Clossun shotgun that was not specified in the warrant. We disagree. Prior to the search Stillings had informed the police that Philbrick had received a number of guns from the Clossun and Whalen burglaries. During the search of Philbrick's gun cabinet for the two guns specified in their warrant, the police were told by Philbrick himself that he had bought a number of guns from Stillings, and he pointed out as being among the guns purchased the Clossun shotgun with a distinctive pink bead sight that became the subject of Count I. Coupled with what Stillings had told them, Philbrick's specific identification of guns he had bought from Stillings gave the police probable cause to believe that Philbrick had received them as stolen property. The police were legally justified under the warrant in searching Philbrick's gun cabinet and had probable cause to seize the Clossun gun which was in "plain view" before them. In sum, we reject all three of Philbrick's contentions for invalidating the warrantless seizure of the Clossun gun involved in his conviction. *See State v. Snow*, 527 A.2d 750, 753 (Me.1987); *State v. Salley*, 514 A.2d 465, 467 (Me.1986).

■ Entirely apart from his suppression arguments, Philbrick contends that "obvious error" occurred at trial to require us to vacate his conviction. At the suppression hearing the prosecutor had stipulated that the State would use at trial only two specifically identified guns from among those seized from Philbrick. In fact the State presented evidence of guns beyond those two. Philbrick acknowledges that the prosecutor's violation of the stipulation occurred unintentionally and without any bad faith. Apparently no one noticed the oversight until after trial when defense counsel—the same attorney who represented Philbrick throughout the proceedings and made no objection to the evidence presented at trial—examined the transcript while preparing the appeal. To whatever extent the additional guns were relevant to Count I, the only count on which Philbrick was convicted, the testimony was at most merely cumulative to the clear evidence showing how Philbrick came into possession of the stolen Clossun gun with the distinctive pink bead. Philbrick cannot show any significant prejudice from the State's error, let alone error so highly prejudicial that it virtually deprived him of a fair trial. *See State v. Dube*, 522 A.2d 904, 907 (Me.1987); *State v. Profenno*, 516 A.2d 201, 203 (Me. 1986).

The entry is:
Judgment affirmed.

All concurring.